JOSEPH SHAW, ET AL., Appellees, v. H. B. NELSON, Appellant, and THE BOARD OF SUPERVISORS OF MAHASKA COUNTY ET AL., Co-Appellants.

**Drainage:** APPEAL: NOTICE. Service of notice of appeal in drainage cases accepted by the county auditor and filed by him is sufficient to give the court jurisdiction.

**Same:** APPEAL BOND: COLLATERAL ATTACK. Where an appeal bond in drainage cases has been approved and filed by the county auditor, although defective, the approval can not be collaterally attacked.

**Same:** SURETIES. An appeal bond in drainage proceedings under section 1989a6 of the Code Supplement, sufficient in amount and signed by the requisite number of sureties, is not invalid because some of the sureties are also principals. in the bond and petitioners for the establishment of the district.

**Same:** ESTABLISHMENT OF DRAINAGE DISTRICTS: REPORT OF ENGINEER: POWER OF SUPERVISORS. The statutes relating to the establishment of drainage districts, contemplate that the board of supervisors shall follow the plan recommended by the engineer, and the board is not at liberty to discard the same and establish another and different district from that recommended. .

*Appeal from Mahaska District Court.*—HON. BYRON W. PRESTON, Judge.

WEDNESDAY, FEBRUARY 8, 1911.

THE board of supervisors of Mahaska County established a drainage district in said county known as drainage district No. 2, and some of the parties whose lands were included in the district appealed to the district court by serving notice upon the county auditor. Reaching the district court the trial judge simply took evidence upon the validity of the order for the establishment of the district, and after all was adduced reversed the action of

the board and remanded the matter for further proceedings before the board. Defendant Nelson, who was one of the petitioners for the ditch, the board of supervisors, and other parties, some of whom owned no lands within the district as established by the board, appeal.—*Affirmed.*

*Liston McMillen,* for appellant Nelson.

*J. F. & W. R. Lacey,* for appellants Prine, Lacey, and Everett.

*John O. Malcolm,* for appellant Henry.

*S. V. Reynolds* and *Burrell & Devitt,* for appellees.

Deemer, J.—I. At the outset we are met with the claim that the district court had no jurisdiction of the case because no notice of appeal from the decision of the board

1. Drainage: appeal: notice. of supervisors was given, and for the further reason that the appeal bond is insufficient and void because not signed by any surety or sureties. Service of the notice of appeal was accepted by the county auditor, and the notice was filed by him. This was in accord with the statute (Code Supp. 1907, section 1989a6) and it gave the district court jurisdiction.

II. The appeal bond purports to be signed by nine persons as principals and by seven others as sureties. It is said, however, that the seven sureties were in fact princi-

2. Same: appeal bond: collateral attack. pals, and that the bond is so defective that it gave the district court no jurisdiction. It is true that all of the parties named as sureties joined in the appeal from the board of supervisors, but it also appears that one of them dismissed his appeal before trial in the district court. It further appears that all but one of the sureties was also a principal upon the bond. The bond was approved by the county auditor and the

auditor certified to the district court the notice of appeal and the final order establishing the drainage district. The statute (Code Supp., section 1989a6) provides in substance that to perfect an appeal a bond must be filed with the county auditor and approved by him, conditioned, etc. If the bond be defective only, the approval by the auditor can not be collaterally attacked. *Porter v. Telegraph Co.,* 133 Iowa, 747.

In *Minton v. Ozias,* 115 Iowa, 148, we said that if a bond is not signed by any surety, and therefore does not comply with the statute, it is no bond, and that the appeal should be dismissed. But in *Drainage District No. 3,* 146 Iowa, 564, it was expressly held that a bond signed by sureties who were also petitioners for the ditch was not defective. True, the bond in that case was the one required to be filed by the petitioners at the inception of the drainage proceedings as required by section 1989a2, Code Supp., but what was said regarding the qualifications of sureties is applicable here. The conclusion there announced was that there is nothing in the statute prohibiting a petitioner for a drainage district from signing a bond as surety. The bond is conditioned to pay the costs and expenses of the appeal if a more favorable judgment than that rendered by the board of supervisors is not obtained. Several of the sureties on the bond now in question, while petitioners for the establishment of the drainage district, have no lands which were included in the district as established by the board of supervisors, and one of them, as already suggested, was not a principal on the bond.

3. SAME: sureties.

There is no showing that the bond is not amply sufficient in amount, and it is signed by more than the number of sureties required. In view of our former holding these sureties were not so disqualified as to justify us in saying that there was no bond. The parties who signed as sureties would not be heard to say if action were brought

against them that they could not so sign, and there is no reason for holding the bond void. *Boone Co. v. Jones,* 54 Iowa, 699; *State v. Anderson,* 16 Lea (Tenn.) 321.

III. Coming now to the merits of the controversy: A civil engineer or surveyor was appointed as provided by law to make a survey, prepare plans, etc., for a drainage district upon a petition properly filed. He made his report, showing the district recommended by him, the main ditches (of which there were two), the lands to be included, the ponds and low places upon the land included in his report, the size of the ditches, their terminals, etc. When the matter came to final hearing before the board it did not establish the district outlined and planned by the engineer and did not send the matter back to the same or another engineer, but instead established another and much smaller one, one of the ditches so established having no outlet save upon private property. As to these, the board made the following order:

4. SAME: establishment of drainage districts: report of engineer: power of supervisors.

It is further ordered that the improvement of dykes and ditches as shown by the last report of the engineer, Earl Bridges, be constructed, built, and dug, according to the plans and specifications therein down to the north line of Lacey and Everett's land. It is further recited that Lacey and Everett appeared in open board and consented to the discharge of the water of this district on their land from this improvement, and agreed in open board to build such ditch as may be necessary to conduct the water across their land substantially along the route of old St. Joseph's creek, and waived claims for damages, and their land is therefore not included in this drainage district; it being the belief of the board that this will be for the best interest of the district. It is further recited that Lee DeLong appeared in open board and waived damages, and agreed in open board to build that part of said improvement as shown by said engineer on his land according to the plans and specifications in said report, and his land is therefore not included in this drain-

age district, it being the belief of the board that this will
be for the best interests of the district.

Of the parties so named one owned lands from the dis-
trict as established down to the natural outlet for the
ditches—the Des Moines River—while the other owned
land covering but a part of this territory, thus leaving the
outlet for one of them upon private lands far removed
from the natural outlet.    The plan as recommended by
the engineer contemplated a main ditch seventeen thousand,
seven hundred feet in length, which as shown by the plat
extended to the Des Moines River.    The board cut off
eight thousand, seven hundred feet from the lower end,
leaving it to discharge upon private lands, upon the agree-
ment set forth in the order of the board.    These parties
did not own land down to the river, so that no adequate
and specific outlet for the ditch was provided.    As orig-
inally planned the district contained about two thousand,
five hundred acres, and as finally established by the board
it contained about nine hundred acres.    The engineer at
one time made an amendment to his plat or plan, but
the board did not establish the district in accord with
any plan presented to it by an engineer, either original
or amended, but left the matter of the outlet for the
ditches in private hands, and as to one of them did not
cover the entire distance to the river where the ditch should
naturally terminate.    The engineer was called as a witness
on the trial in the district court, and he testified that the
district so established was not recommended by him, and
that he did not think it feasible.    The case seems to be
ruled by *Hartshorn v. Wright Co.*, 142 Iowa, 77, from
which we quote the following:

That the survey and approval of the district by the
engineer appointed for that purpose is essential to the
authority of the board of supervisors to proceed to the es-
tablishment of the district, see 1989a2, which provides:

The board shall appoint an engineer to examine, survey, etc., and to make return to the auditor showing the starting point, the route, the terminus of the ditch or drain, the course and length thereof, elevations, etc.     Section 1989a3 provides:   That the board shall examine the maps and plats of the engineer and either approve or disapprove of the same, etc.   The board by these sections is confined to the approval of a plan adopted by some engineeer as feasible from an engineering point of view, and in our opinion it is not authorized to adopt some plan on its own motion or to consider any plan not recommended by a competent engineer.   There is much reason for such provisions.   The ordinary member of the board has no such knowledge of the subject of drainage, etc., as to justify leaving this matter to his judgment.   It was a wise requirement which limited the board in its final action to some plan which was approved by a competent engineer. This point is clearly made in *Zinser v. Board,* 137 Iowa, 660.   In that case it is said that a report and a plat from an engineer is required for various purposes, etc., and until the same is made and recommended by him the board shall not recommend the construction, etc.   We do not think that the board in the exercise of its original jurisdiction can do more than establish a district planned and recommended by a competent engineer.   Its action is upon such a plan of survey and not upon some other plan which the members may in their judgment think feasible.

Appellants say that this case and others like it are no longer controlling, for the reason that the Legislature, since these decisions were filed, has changed the law in this respect.   Reliance is placed upon chapter 118, section 3, of the Acts of the Thirty-third General Assembly, which so far as material reads as follows:   "At any time prior to the establishment of the district the plan may be amended, and as amended shall be conclusive unless appealed from as provided in section 1989a6, of this chapter." Also, "such report may be amended before final action."

The plan here referred to is manifestly the plan of an engineer, and the statute, read as a whole, does not, in our

opinion, contemplate the amendment of a plan by the board on its own motion, but rather the adoption of a district according to an amended plan recommended by a competent engineer. We shall not set out the entire section, for that part which was referred to in the *Hartshorn* case, *supra,* has not been changed. We do not think that it was the intent of the Legislature to permit the establishment of a district which has not been recommended either in an original or an amended plan. This, to our minds, is the proper interpretation of the statute, and it is the only safe one to be adopted. Moreover, we think the law clearly contemplates such control over the ditches when finally constructed as will make them useful and available, and that this matter should not be left to private parties, especially where, as in this case, the parties do not control the land through which the ditch passes to its natural outlet. The board erred in establishing the district, and the trial court was right in reversing its action and remanding the proceedings for further action in the premises if so advised.

The order of the district court is therefore *affirmed.*