IN THE MATTER OF COUNTY DRAINS, numbered 44 and 45,
v. NEWTON LONG, Appellant.

**Drainage:** ESTABLISHMENT OF DISTRICT: JURISDICTIONAL DEFECTS. Irregularities of detail not affecting the jurisdiction of the board of supervisors, such as the giving of notice of hearing without an express direction of the board and before the board had examined the return of the engineer, will not invalidate the proceedings, at the instance of an objector who appeared before the board at the time fixed in the notice and objected to the establishment of the drainage district, where the objections were overruled and the district was established in accordance with the engineer's report.

**Same.** The fact that at the time of filing the petition for the establishment of the district title to the land primarily affected was in the wife of the petitioner was not a fatal defect, where the wife subsequently filed a duplicate petition with a bond in legal form, which was approved, and the report of the engineer made pursuant to the original petition was readopted by him; but this was a substantial compliance with the statute in this respect.

**Same:** DIFFERENT DISTRICTS: CONSOLIDATION: AUTHORITY OF ENGINEER. The engineer appointed by a board of supervisors to investigate and report a system of drainage is not bound by the plan proposed in the petition therefor, but he may report a different plan and different boundaries for the proposed district; and where there are two petitions for drainage districts relating to the same neighborhood and both projects are referred to the same engineer he may consolidate them, and where there is no objection to the regularity of the proceedings under the petition for the establishment of one of the districts, it is immaterial that the proceedings under the other petition were defective.

**Same:** ESTABLISHMENT OF DRAINS: WATER COURSES: STATUTES. The statute providing that drains shall be located along natural water courses or the general course of natural drainage of the land, with due regard for straightening and shortening the natural water courses, is to be construed in a practical way and with due regard to the engineering problems involved: So that the passage of a drain through an alleged natural surface water

divide where the elevation is but slight, thus diverting the water from its natural course, is not a fatal objection to the validity of the establishment of the drain.

**Same:** COSTS: ATTORNEYS' FEES. A party appealing from an order of the board of supervisors establishing a drainage district, who is unsuccessful, should not be charged with the fees of the attorney employed by the district.

*Appeal from Boone District Court.*—HON. R. M. WRIGHT, Judge.

THURSDAY, MARCH 9, 1911.

APPEAL from an order of the district court confirming the action of the Board of Supervisors of Boone County in the establishment of a drainage district. *Modified* and *affirmed*.

*Whitaker & Snell,* for appellant.

*Harpel & Cederquist,* for appellee.

EVANS, J.—In September, 1906, one Cartwright filed a petition and bond for the establishment of a drainage district. This was designated upon the record of the county auditor as No. 44. This petition described the course of the proposed tile drain. The outlet proposed therein was a certain open ditch running from north to south, and being upon the land of appellant. The land of appellant lies east of the Cartwright land, and the proposed tile drain would enter appellant's land from the northwest. In October, 1906, other petitioners filed a petition for the establishment of. a drainage district partially contiguous to that described in the. Cartwright petition. This petition was designated in the record as No. 45. This petition also proposed a tile drain and described the course of it. This course extended toward the south

along the open ditch which had been selected for an outlet in the Cartwright petition, and it extended south from the point of such proposed outlet one thousand one hundred feet to its own outlet. The same engineer was appointed for both projects. · In his report he recommended that the two projects be consolidated, and that No. 44 be regarded as a branch of No. 45. The day was fixed for a hearing and notice given, and the appellant appeared before the board and objected to the establishment of No. 44 as a branch of No. 45. Such objection being overruled, he appealed to the district court from the establishment of the drainage district.

Many of the objections argued here are based upon the irregularity of the procedure before the board of supervisors. And much of this irregularity relates to the method of the board and of the county auditor as to making the proceedings of the board properly of record. Without dealing with these irregularities in detail, it is sufficient to say that none of them affected the jurisdiction of the board. That proper petitions were filed and bonds approved, that an engineer was appointed and that his report was filed, that a day of hearing was fixed and notice given, and that the appellant actually appeared before the board at such date, are all made to appear from the proper records.

1. Complaint is made that section 1989a3, Code Supp. 1907, was violated in that the county auditor caused notice to be given without any express direction of the board of supervisors to that effect, and before such board had actually examined the return of the engineer. Inasmuch as upon final hearing the board of supervisors did in accordance with section 1989a5 approve the return of the engineer, and did order the establishment of the district in accordance with such report, the fact, if it be a fact, that they did not examine the return of such engineer

1. DRAINAGE:
   establishment
   of district:
   jurisdictional
   defects.

before causing notice to be given, became quite immaterial. If upon final hearing they had rejected the return of the engineer, then the petitioners and bondsmen might properly object to the payment of costs incurred by a needless and unauthorized service of notice. The fact is that the county auditor caused the notice to be given in pursuance of a general oral direction given to him by members of the board in all cases where the return of the engineer was favorable to the petition. Whether this was a strictly proper method we need not now determine for the reason already stated.

It is also contended that there were irregularities in connection with the Cartwright petition which destroyed the power of the board to act with reference thereto. For instance, the legal title to the land that was primarily affected by such petition was in the name of the wife of Cartwright. Subsequent to the filing of the original petition by the husband, the wife filed a duplicate thereof over her own signature and filed therewith a bond, legal in form, which was duly approved. Prior to the filing by the wife the engineer had already filed his return. Subsequent to the filing by the wife, the engineer filed a formal communication referring to the former return and readopting the same. It is argued that the board was without jurisdiction of the subject when the original return of the engineer was filed, and that the later report readopting the same was without authority of the statute. We do not think we would be warranted in adopting this view. It was a substantial compliance with the spirit of the statute. The requirements imposed by statute upon an inferior tribunal should not be too technically construed, lest its efficiency become wholly paralyzed.

2. SAME.

There is another consideration quite controlling at this point. No complaint is made of the regularity of all proceedings relating to No. 45. This project was re-

ferred to the same engineer and at the same time as No.
44.    The engineer was not bound by the
plan proposed in the petition in No. 45. He
had authority under the statute to propose a
different plan and different boundaries to the
district.    Even though there had been no Cartwright peti-
tion, he had power to incorporate that project in his
proposed plan as engineer of No. 45.    Such report on the
part of the engineer was sufficient to bring the proposed
enlarged district before the board of supervisors, and to
confer jurisdiction upon it.    The report of the engineer
recommending the consolidation of the two proposed dis-
tricts 44 and 45 had that effect.    And this consideration
disposes of a number of kindred questions argued by ap-
pellant.    The notice was given after such report of the
engineer was on file, and such report was made a part of
the notice by proper reference.    That the appellant had
notice of such proposed consolidation before the day set
for hearing is not disputed.

3. SAME: differ-
ent districts:
consolidation:
authority of
engineer.

II.    The principal question urged upon us relates to
the alleged diversion of water from its natural course by
means of the Cartwright drain.    We can not discuss this
question very fully for want of maps and
plats which the parties have failed to in-
clude in their abstracts in reduced size.    We
have had access to the original exhibits used
on the trial, but these are not available to us for the pur-
pose of this opinion.    The land of Cartwright lies to the
west and that of appellant to the east of a north and south
highway upon which a grade has been maintained for many
years.    The land is nearly flat on both sides of the high-
way.    There is a pond upon the land of Cartwright.    The
course of the first overflow from this pond is toward the
south, a few hundred feet west and somewhat parallel with
the line of drain No. 45.    A flood of from eight to ten
inches in depth will send the water to the southeast also

4. SAME: estab-
lishment of
drains: water-
courses:
statutes.

along the line of drains 44 and 45. The watercourse to the south is worn and washed to some extent. According to the engineer, this is caused to some extent by the maintenance of the grade in the highway on the east side. East of the highway grade the natural fall of the land, though slight, is toward the south and east. According to the engineer, the difference in the elevation of the bottom of the alleged watercourse running south and that of the alleged divide to the south and east which is traversed by drain No. 44 is eight to ten or twelve inches. The contention of appellant is that this elevation constitutes a natural divide, and that the effect of the drain as laid will be to divert the water from its natural course in violation of statute. It is conceded that the alleged watercourse extending south forms a junction with the watercourse of drain No. 45 at a point about six thousand feet further south. It is claimed that these two courses form branches of the main course, and that the ground between is a natural watershed. Every extensive drainage district necessarily has within it varying elevations. It may include ponds and minor watercourses, and these may be separated from each other by the irregularities of a comparatively flat surface. The statute should be construed in a practical way and with due regard to the practical engineering problem involved in the given drainage project. If every increased elevation of a foot or two could bar the progress of a drain toward its ultimate outlet, then few drainage projects would be practicable. A drainage ditch usually is of varying depth, and this variation is necessarily caused by the differing elevation at the surface. We do not think that the difference in the elevation in this case should be deemed sufficient to show a diversion of water from its natural course within the meaning of the statute.

We think, also, that the course adopted by the engineer was permissible by the express terms of the statute.

The provision relied on by appellant is that portion of section 1989a2, which reads as follows: "That the ditches or drains herein provided for shall be surveyed and located along the general course of the natural watercourses, or in the general course of natural drainage of the lands of said district, having due regard for straightening and shortening of such natural streams, watercourses, and course of natural drainage." It will be noted that this provision permits a drain to be laid "in the general course of natural drainage of the lands of said district," and it permits the "shortening of such natural . . . course of natural drainage." The most that can be said of drain 44 is that it tended to shorten the natural course.

It may be noted here that chapter 118 of the Acts of the Thirty-Third General Assembly expressly permits the diversion of a natural watercourse for the purpose of a public drain. This statute was not in force when the action complained of was had. The appellant naturally contends that he is entitled to have the case disposed of on the law in force when the proceedings complained of were had. Assuming this position to be correct as a general proposition, we can not overlook the fact in this case that if we were to reverse the action of the board of supervisors and send the case back, it could then proceed under the present statute and legally do the very thing which it has done, so far as this question is concerned. We are at a loss, also, to see from this record any meritorious ground of complaint on the part of appellant. From the outlet of drain 44 to the outlet of drain 45, a twenty-inch tile is used. There is not a suggestion in the record that this is not of abundant capacity to carry away all the water to be discharged into it.

It is urged for appellant that he should not be included within the Cartwright district, and should not, therefore, be assessed for any benefits arising therefrom. That is a question to be considered when the assessment of

benefits is made. Conceding that the Cartwright drain is
of no benefit to appellant, presumably no assessment would
be made against him therefor. On the other hand, it may
be presumed that Cartwright will be assessed for benefits
resulting to him from the twenty-inch tile which serves as
his outlet. We can not go into that question here nor con-
sider at all the relative rights of the parties in that respect.
The only question we can consider in this case is whether
the ditch was properly established within the provisions
of the statute. Our conclusion is adverse to the appellant
on that question.

III. The trial court in the taxation of costs against
the appellant assessed the attorney's fees of appellee's at-
torney, and complaint is made of such action. This action
of the trial court is based upon the provision
of Code Supp. 1907, section 1989a6, which
provides that the appeal bond shall be "con-
ditioned to pay all the costs and expenses of the appeal
unless the finding of the district court shall be more favor-
able to appellant than the finding of the board." Section
1989a14 provides: "When any appeal is taken from any
order of the board made in any drain proceeding coming
before it for action, it shall be the duty of the board to
employ counsel to represent the interest of the drainage
district affected by said appeal on the trial thereof in the
appellate court and the expense thereof shall be paid out
of the drainage fund of said drainage district." It is the
rule in this state that attorney's fees are not usually deemed
a part of the taxable costs in the case as against the de-
feated party unless so provided by statute. The theory
urged by the appellee is that the attorney's fee was a part
of the "expense" of the appeal, and section 1989a14 above
quoted is relied on in support of this theory. We think
that the provision of statute last quoted above is quite fatal
to this theory, in that it expressly provides that this "ex-
pense" (attorney's fees) "shall be paid out of the drainage

5. SAME: costs:
attorneys'
fees.

fund of said drainage district." It is our conclusion that these provisions of the statute do not contemplate the taxation of attorney's fees against a defeated appellant. To this extent the order of the lower court should be modified, and it is so·ordered. In all other respects the order of the trial court is affirmed. *Modified* and *affirmed.*