BOARD OF SUPERVISORS et al., Appellants, v. C. S. ADAMSON et al., Appellees.

CONTRACTS: Rescission and Abandonment—Mutual Mistake—Unknown Impediment to Performance. Mutual mistake, while acting with reasonable prudence, as to the existence of a substantial impediment to the performance of a contract, justifies cancellation, even though the contract contains no clause limiting liability. So held as to a contract for the excavation of a ditch, both parties being in ignorance of the fact that no outlet existed for the ditch.

CONTRACTS: Rescission and Abandonment—Loss of Right—Delay Induced by Other Party. The right to cancel a contract because of mutual mistake is not lost by *delay* in cancelling, after the mistake came to light, when such delay was induced by the one seeking to prevent cancellation.

CONTRACTS: Rescission and Abandonment—Effect. The exercise of an existing right to cancel a contract by reason of mutual mistake, puts an end to all contract relations; and the one cancelling is not thereafter under obligation to take up the work anew, even though, subsequent to the cancellation, the subject-matter of the mistake is removed.

*Appeal from Greene District Court.*—M. E. HUTCHISON, Judge.

MARCH 7, 1918.

SUIT against a contractor and the surety on his bond for failure to perform the contract. Various defenses were interposed by cross-petition. The trial court cancelled the contract and the bond sued upon. Plaintiffs appeal.—*Affirmed.*

*Wilson & Albert* and *Howard & Sayers,* for appellants.

*J. A. Henderson* and *Church & McCully,* for appellees.

SALINGER, J.—I. The plaintiff board and the defendant C. S. Adamson contracted that the latter should dig a drain ditch. This is the contract which the trial court cancelled. With it, of course, it cancelled the bond given to secure the performance of the contract. The record is in such condition as that the only question for our consideration is whether the cancellation was rightful because of mutual mistake. If the evidence fails to establish such mistake, there must be a reversal, and plaintiffs must have judgment for $1,250. .

1. CONTRACTS: rescission and abandonment: mutual mistake: unknown impediment to performance.

Passing, for the present, what the parties *should* have known, we find the testimony to show most clearly that, when the contract was made, neither party knew there was no "outlet" for this ditch.

It is proved that want of this outlet made the performance of the contract greatly more difficult. Therefore, the dispute over whether performance was made *impossible* is an immaterial dispute. Relief may be had if the mutual mistake is as to any substantial matter. Remedy is not limited to mistaken belief that certain work is *possible*. If an agreement to dig a ditch is made in the belief that its course runs through soft and level dirt, when in fact the drain must be constructed wholly by tunneling through granite mountains, then, though it was not an impossibility to construct the ditch, to a certainty such contract could be avoided for mutual mistake. The contract in consideration was made without knowledge that there was a lack of outlet, consequently without knowledge that performance would be made greatly more difficult because there was no outlet. It is fair to assume the contract price was fixed in that mistaken belief, and we hold that such mutual mistake may avoid this contract. See *Allen v. Hammond*, 11 Peters (U. S.) 63; *Fink v. Smith*, 170 Pa. St. 124 (32 Atl. 566).

II. In the last analysis, plaintiffs do not seriously contend that such a mutual mistake will not sustain a cancellation; and their real reliance is upon matters in avoidance. The first of these is fairly well stated in one of the "points" for appellant, which asserts the court erred in not holding that defendant, having made no provision in his contract limiting his liability, assumed the risk of being able to complete the contract, regardless of the character of the outlet furnished. This would seem to demand of defendant the anticipating powers of a seer or prophet. He believed there was no lack of outlet to interfere with the work he had undertaken to do, and yet appellants say he is without remedy because he did not demand a provision in the contract that lack of outlet would authorize him to rescind.

### 2-a

The next contention is the contract was made with express reference to certain plats and profiles which the contractor could and should have examined. This argument has no point, unless the claim for it is that, if the contractor had examined these instruments with reasonable care, he would have been advised before he bound himself that there was no outlet. The whole argument at this point is necessarily bottomed on the proposition that one may not assert having labored under a mistake of fact if, by the examination of papers like these, it was *possible* for him to avoid laboring under a mistake of fact. But this is not sound, when so broadly stated, and it must be qualified by injecting the elements of negligence and of degree of care. If the plat and profile had made it so plain that, upon any reasonable examination, the average ditch contractor must have known there was no outlet, defendant may not plead mistake. If no possible examination of the same papers would have revealed there was no outlet, clearly, the reference to the plat and profile would not estop claiming mis-

take. Between these two extremes lies the ground where degree of care is controlling. It may be assumed that super-care in examining these instruments would have informed the defendant of the truth. But he was not bound to use super-care. If it fairly appear that reasonable examination of these papers on part of a man in the business of digging ditches would still leave him in ignorance that there was no outlet, then the failure to examine these papers is no bar here. Whether he looked at them or not, he is affected only by what would have been revealed had he made a reasonable examination. In *Markey v. Chicago, M. & St. P. R. Co.,* 171 Iowa 255, at 268, we had occasion to determine whether a party was negligent in acting upon what he had constructive notice of. In holding that he had not been negligent, we said:

"And the law of negligence is, for all practical purposes, a set of rules defining how far absolute care may be departed from, without liability. Negligence is not failure to do all possible, but failure to do what ordinary prudence dictates."

We held, in the recent case of *Garner v. Johns,* 182 Iowa 684, that, where a vendor represented that he was selling a farm which lay east and west along a described road, that, though the conveyance tendered to effectuate the purchase was read by the buyer before paying, and had a description from which it was possible to ascertain that the farm was not lying east and west and along that road, this did not necessarily estop the defendant to complain of fraud in the representations.

This brings us fairly to the question of what a reasonable examination would have disclosed to this man. The contract referred both parties to the plat and profile, and one was as much bound by what it contained as the other. These instruments did not convey to the board of supervisors that an outlet was lacking. They were and remained

in ignorance of that fact until after this contract was entered into. They had employed an engineer to draft these plats and profiles, and the law presumes for them that the employe was a competent engineer. Code Supplement, 1913, Secs. 1989-a2, 1989-a3, 1989-a7, 1989-a8. It seems that his own handiwork in drafting these did not apprise him of this defect. He believed the ditch would clear itself from the water in it while being dug.

The construction the parties gave to the entire transaction is worthy of great consideration. *Stewart v. Pierce,* 116 Iowa 733; *Heinz v. Roberts,* 135 Iowa 748; 9 Cyc. 588. If the parties are to be charged with having known there was no outlet, because the plats and profiles made that fact manifest, their subsequent conduct is inexplicable. The contractor was given an extension of time because it was discovered, after he contracted, that there was no outlet. Nay, more, the members of the board expressed regret that this should be found to be the situation, and actually made an expenditure of money to have the outlet finished. All this seems to have had the sanction of the engineer. Certainly, he did not object. If the parties were dealing on the theory that something advised all before contracting that there was no outlet, none of these things just adverted to were natural. The contractor who knew all the time there was no outlet would not be apt to ask relief because none existed. The board, being advised of this lack, and knowing that the other party was also advised, would not have expressed regret at finding what was known to exist, much less have voluntarily expended money to relieve the other from an obstacle which he knew existed when he went into the undertaking. The entire record absolutely demonstrates that both parties, acting with reasonable prudence, still fell into a mutual and material error. There was no negligence on part of this defendant which will warrant a court of equity in saying that he should not be relieved from mistake

because his own carelessness induced the mistake.

III. It is, of course, undoubted that the right to rescind for mutual mistake can be forfeited, and it is the general rule that such right is lost if there be an unreasonable delay in disaffirming after the truth is discovered. But this rests in estoppel, and no one may estop another by what he himself has induced that other to do. It may not well be denied that, while this defendant went on with the work after he discovered the difficulties caused by the lack of outlet, he did so because the plaintiffs desired him to do so, and promised him relief from the untoward conditions he was encountering. They are not in position to say he was guilty of laches because he believed they would, within a reasonable time, give him the relief promised. When he finally abandoned the enterprise, the outlet was still not made. But a time finally came when it was made. The defendant refused to go on with the work, and it was relet to others, at a price larger than the one fixed by the contract with defendant.

2. CONTRACTS: rescission and abandonment: loss of right: delay induced by other party.

3. CONTRACTS: rescission and abandonment: effect.

It is the recovery of this differential that the suit is for. The defendant seeks to excuse his not going on after the outlet was finished, on the ground that the completion was so long delayed that, by the time it was finished, the price of labor and the like had greatly advanced; and that to continue the work to completion at the contract price would have entailed a serious financial loss. Plaintiffs respond that, where one contracts to do a thing at a fixed price, he may not excuse nonperformance because the venture proves unprofitable. This is undeniable, if the one making such an excuse be still bound by contract. If he had the right to abandon the contract because of mutual mistake, this right is not taken away because he makes an untenable excuse. This cost argument is not only untenable, but needless.

Whether continuing was profitable or not is immaterial, because he had warrant for terminating the contract, and had done so.

IV. There is some controversy as to a relatively small payment made by the defendant to one Hamilton. The record leaves us in some confusion as to this, but we take it to be in support of some claim that ratification had estopped defendant from rescinding. We are of opinion that the evidence proves no such estoppel, and it seems payment was finally made to Hamilton under a stipulation that it should be without prejudice.

On the whole record, we are satisfied that the decree of the district court should be, and it is hereby,—*Affirmed.*

PRESTON, C. J., EVANS and GAYNOR, JJ., concur.