GORDON CONSTRUCTION COMPANY, appellant, v. BOARD OF SUPERVISORS OF CERRO GORDO COUNTY, also acting as trustees of DRAINAGE DISTRICT No. 120, appellees.

No. 48792.

(Reported in 72 N.W.2d 551)

October 18, 1955.

Clough & Clough, of Mason City, for appellant.

Westfall, Laird & Burington, of Mason City, for appellees.

. Per Curiam—The Board of Supervisors of Cerro Gordo County, as trustees for Drainage District No. 120, divided the improvement into two sections: Section No. 1, clearing and open ditch construction, and Section No. 2, construction of tile lines. Plaintiff, Gordon Construction Company, bid at the letting for the construction of both sections, the bid containing the reservation that "this bid is offered only with the award of all or none." Plaintiff's bid was accepted and plaintiff entered into a contract for the construction of the improvements in both sections for $32,542.50; the work to commence on or before May 1, 1952, and

to be completed on or before September 1, 1952. Plaintiff, with the Board's consent, sublet Section 1 and this open ditch was constructed in accordance with the plans and specifications.

The tile lines in Section 2 of the contract were not constructed by plaintiff and the evidence concerning the reasons why this was not done will be presently stated. On September 2, 1952, the Board gave written notice (section 455.114, Code, 1954) to plaintiff and the bonding company to proceed with construction of the tile lines within ten days. When nothing was done the Board relet Section 2 which was constructed at a cost of $4394.15 more than the contracted price with plaintiff. Since the auditor had funds due plaintiff (for the construction of Section 1) the engineer, in his recommendation that the project be accepted, also recommended that the $4394.15 be withheld as damages due the district for plaintiff's failure to carry out the contract. The Board set this down for hearing and plaintiff appeared and objected. Plaintiff's objections were overruled and plaintiff appealed to the district court under the provisions of section 455.92, Code, 1954, which provides: "Any person aggrieved may appeal from any final action of the board in relation to any matter involving his rights, to the district court of the county in which the proceeding was held."

Section 455.94, Code, 1954, provides the appeal must be taken in twenty days and the following sections govern the manner and pleadings, and section 455.101, Code, 1954, provides in effect that appeals from orders, other than those fixing compensation for lands taken, or the amount of damages any claimant is entitled to "shall be triable in equity." After trial the district court entered a decree dismissing the appeal, from which plaintiff appeals.

Going on with the facts we find that early in June of 1952, while the subcontractor was constructing the open ditch, and before any work had been started on Section 2 or the tile lines, it was discovered lateral 3 would not be necessary. It was found that a county employee had made an error in measuring an existing tile line as a 14-inch tile line instead of an 18-inch tile line. When this error was discovered the engineer recommended to the Board that lateral 3 be abandoned and lateral 7 be partially relo-

cated and extended. On June 16, 1952, the Board approved the change and on June 20, 1952, the engineer wrote plaintiff notifying him lateral 3 would be abandoned, which letter plaintiff received about June 21, 1952.

Don S. Gordon, the proprietor of plaintiff-construction company, testified he answered the engineer's letter of June 21, 1952, and he introduced in evidence Exhibit E which he stated was a carbon copy of his alleged answering letter. The engineer testified he did not receive the original of this letter and never knew of such a letter until shown the said exhibit shortly before suit. Exhibit E is dated June 26, 1953, and the letter stated in part: "Re: Letter of June 20, 1953." Mr. Gordon explained that he hit the wrong typewriter key twice, intending the year date in each instance 1952. The exhibit goes on to state the writer did not "go along with this change" which he considers "a major one and it changes and seriously impairs our contract as we bid it." The letter states "changes such as this * * * destroys the original contract as we bid." Don Gordon testified he considered the contract over when he received the letter from the engineer dated June 20, 1952. But the contractor received two more letters from the engineer in August of 1952 urging him to proceed with the construction of the tile lines and to "get busy." These letters were not answered but on August 29, 1952, plaintiff wrote the Board requesting an extension of sixty days on the contract, stating the Federal Government had much of their equipment tied up but it was now released and "We expect to begin tiling operations during the first week in September and should complete it during the month of October."

Plaintiff explains this letter seeking a 60-day extension, which is obviously inconsistent with his position that the contract was over with when he received the letter of June 20 from the engineer, by saying it was sent to "protect the bonding company" and Don Gordon testified he had no intention of constructing the tile lines.

I. The trial court rested his decision on the ground that plaintiff had the right to appeal from the action taken by the Board on June 26, 1952, eliminating lateral 3, and the action taken by the Board on September 26, 1952, reletting Section 2 of the contract. We are not certain the appellate procedure of the

chapter, section 455.92 et seq., Code of 1954, need be employed to decide disputes between the contractor and the district. It seems to have been the method employed here by which the parties presented the matter to the district court and no procedural question is raised. We have not found precedent for this. The cases where the appellate procedure of the chapter was employed are cases where the dispute is between a landowner and the Board. There are many cases of independent suits between the contractor and the district to decide contract disputes. See Federal Contracting Co. v. Board of Supvrs. of Webster County, 153 Iowa 362, 133 N.W. 765; Littell v. Webster County, 152 Iowa 206, 131 N.W. 691, 132 N.W. 426; Gjellefald v. Drainage District, 203 Iowa 1144, 212 N.W. 691.

Of course no money judgment could be obtained against the district as it is not a legal entity. Houghton v. Bonnicksen, 212 Iowa 902, 237 N.W. 313. But judicial determination of contract rights has been sought and obtained in suits by and against the trustees.

We make no criticism of the procedure adopted here but we would be loath to hold a contractor would be compelled to appeal from action taken by the Board with respect to his contract when the contractor had no notice of the Board meeting that resulted in the Board action. However the matter is presented, we are inclined to agree with the proposition asserted by plaintiff that the dispute is "controlled by usual contract law." The central issues here, as we see them, are: (1) Did the Board have the right to eliminate lateral 3? (2) Was the elimination of lateral 3 such a change in the contract as would warrant rescission by the contractor? (3) Did the contractor actually rescind the contract?

II. Plaintiff argues the Board had no right to eliminate lateral 3. He points to the statutes governing the formation of a drainage district which allow appeals to persons affected adversely by the proposed improvements and the statute (section 455.106, Code, 1950) which says the remedy by appeal "shall be exclusive." The evidence here is that the owners of the land where lateral 3 was located came to the engineer long after the district was established and their right to appeal lost, and told the engineer of the mistake—that they had an 18-inch tile instead of

a 14-inch tile shown in the survey. These owners filed a written petition with the Board showing the error and requested the abandonment of lateral 3. The Board action eliminating lateral 3 was taken on the foregoing petition by the landowners.

The Board acts for the landowners in the drainage district. First National Bank v. Webster County, 204 Iowa 720, 216 N.W. 8. Its action eliminating an unnecessary lateral was not void. No work had been started on Section II of the contract. The question here is not whether the lateral could be eliminated under the law, after the time when landowners could appeal its inclusion. The question here, as between these parties, is whether the elimination could be done under the contract.

 III. The Board argues the lateral could be eliminated under the increase and diminish clause of the contract. This is a usual clause in such contracts which states in effect the plans and profiles, which indicate the proposed work, represent "foreseen conditions" and "quantities may be increased or diminished without impairing the contract." Changes would call for an increase or deduction in the payment based on the unit price fixed in the contract. There was testimony that changes under such clauses rarely exceeded 5%. Plaintiff testified lateral 3 constituted 27.8% of the tile line footage in Section II of the contract and 40% of the cost. We do not feel such a major amputation could be made under the increase and diminish clause of the contract. That is, it could not be made by the Board as a matter of contract right and forced on the contractor.

Our conclusion on this phase of the case is that the Board's order eliminating lateral 3 was not void. It was taken in the best interest of the landowners but it cannot be supported as a contract right granted by its contract with plaintiff.

 IV. Since the Board's action would not be allowed under the increase and diminish clause of the contract the contractor could rescind if the Board's action constituted a substantial breach. White v. Massee, 202 Iowa 1304, 211 N.W. 839, 66 A. L. R. 1434. We are impressed with the evidence of plaintiff that the extent of tile work determines, to some extent, the amount of the unit price; that on a small job the unit price is higher than on a large job; and that much of the cost to the contractor is moving

the equipment. But we need not decide whether the Board's action eliminating lateral 3 was a substantial breach entitling the contractor to rescind. We will assume it was. But if he had a right to rescind he was under a duty to do this promptly. Sometimes mere delay can work a waiver of the right to rescind. Board of Supvrs. v. Adamson, 182 Iowa 1265, 166 N.W. 563. The ultimate question here is whether the plaintiff did rescind or whether he showed by his actions he waived complaint in connection with the elimination of lateral 3.

V. The only portion of the evidence which would support a claim for rescission is Exhibit E. Plaintiff was notified of the change in the letter of June 20, 1952. We will assume an answering letter containing an unequivocal notice of rescission as to Section II would have terminated the contract rights of the parties as to this section of the contract. The letter, Exhibit E, if sent and received by the addressee, would be somewhat vulnerable to an argument that it is not an unequivocal notice of rescission, but we need not go into that for there is much doubt that the letter was sent, and plaintiff's later actions are entirely inconsistent with any claim that the contract was rescinded.

The explanation of the date of the letter, and the letter it referred to, both 1953 instead of 1952, is a little weak. Mr. Gordon stated he typed the letter and hit the wrong key. One might do that once but it is a little unlikely a typist would hit the same wrong key twice. The addressee, the engineer, a fairly prominent man in a small town, denied receiving it. His later letters to Don Gordon, in August, and his efforts to get hold of him by telephone to get him started on the tile work are actions consistent with his not receiving Exhibit E or any other word that plaintiff was rescinding. On the other hand Don Gordon's actions are utterly inconsistent with rescission by plaintiff. His letter of August 29, 1952, requesting the 60-day extension, where he states his equipment had been tied up with federal contracts and he goes on to state he expected to begin tiling operations the first week in September and complete it in October, is not the action of a contractor who has rescinded. Again his explanation of this letter, that it was sent to protect the bonding company and keep the Board quiet, is double talk and no explanation at all.

In 12 Am. Jur., Contracts, section 449, page 1031, it is stated: "A party to a contract who, after discovery or knowledge of facts which would entitle him to rescind, treats the contract as a subsisting obligation and leads the other party to believe that the contract is still in effect waives his right to rescind."

The record here also shows that on September 17, 1952, plaintiff entered into a subcontract with one Dille, which the Board refused to accept, but here he recited he was the prime contractor bound to perform Section II.

On the whole record we hold plaintiff did not rescind after the change, and, that by his actions he showed he acquiesced in the change and the Board was right in withholding the damages the district suffered by reason of his failure to perform. The decree of the trial court is affirmed.—Affirmed.

The foregoing opinion, written by JUSTICE MULRONEY before his retirement from the court, is now adopted as the opinion of the court.

All JUSTICES concur.