90 N.W.2d 730 (1958)
Albert THORSON, Herman Thorson and Omer Thorson, Appellants,
v.
BOARD OF SUPERVISORS OF HUMBOLDT COUNTY, Iowa, and Drainage District No. 7 of Humboldt County, Iowa, Appellees.
No. 49426.
Supreme Court of Iowa.
June 3, 1958.
*731 Kelleher & Kelleher, Fort Dodge, for appellants.
Harlyn A. Stoebe, Humboldt, for appellees.
GARFIELD, Justice.
In the district court this was an appeal by plaintiffs, owners of the south half of section 3, Avery township, Humboldt county, from the overruling by defendant board of supervisors of their objections, filed pursuant to section 455.112, Code 1954, to the engineer's certification that work upon the drainage improvement in district 7 had been completed in accordance with plans and specifications. See section 455.111. Following trial in equity as provided by section 455.101 plaintiffs' appeal was dismissed and they have appealed to us from the decree.
The drainage district in question is No. 7, Humboldt County, established prior to 1910. In 1951 a cleanout and other improvements of the drains in the district were being considered and Rowat & Murray, engineers of Belmond, were directed to examine the district and report to defendant board. Their report made in January, 1952, recommended deepening and flattening the interior slope of the ditches and that lateral 1 be reconstructed by being cleaned out and deepened throughout.
After bids were invited Cooper Construction Co. of Fort Dodge was awarded the contract in January, 1954, for the total sum of $45,220.45. Of this amount $5002.52 was for work upon lateral 1$4936.52 for channel excavation of 43,686 cubic yards, including bank leveling, and $66 for repair of ten tile outlets. Total channel excavation in the entire district was to be 373,115 cubic yards at $.113 per yard of which 242,124 yards were to be in the main ditch. About June 15, 1955, engineer Murray certified to the board that work under the contract had been completed in accordance with plans and specifications and recommended its final acceptance. He also filed his final estimate, verified by him, stating that $10,288.21 was due the contractor on the theory the contract had been fully performed.
Plaintiffs filed written objections to the engineer's report, set for hearing before the board on July 1, 1955, complaining mainly of the manner in which the work was done on lateral 1. The objections erroneously refer to subdistrict, rather than lateral 1, but the board must have understood the location of the work complained of. The objections *732 state, in part, the work does not comply with the contract and specifications. Also that the excavation, particularly on the south bank (of lateral 1), is rough and uneven and in many places does not conform to the slope required by the specifications but is vertical, resulting in caving in of earth to obstruct the flow of water in the ditch and undermine the roadway of the adjoining public highway.
The portion of lateral 1 which is the subject of controversy is an open ditch about 1900 feet in length, between stations 33 (on the east) and 52, along the north side of black-topped county highway T which runs east and west along the south side of section 2. The southeast corner of plaintiffs' 320 acres in section 3, is at the upper (west) end of lateral 1 except that a north and south road between sections 2 and 3, intersecting highway T, separates their land from the end of the ditch. The tile on most of the east half of plaintiffs' land outlets through a 12-inch pipe near the west end (station 51 plus 90) of lateral 1. Plaintiffs' objections relate more particularly to the manner in which the work was done on about the west 1000 feet of the ditch referred to. Apparently little consideration was given the engineer's report or plaintiffs' objections thereto at the July 1 board meeting but an adjourned meeting was then announced for July 18. At the later meeting it was shown that excavation on about the West 1000 feet of lateral 1 lacked the depth contemplated by the specifications by about 3½ to 4 feet. That is, the bottom of this part of the ditch was about 3½ to 4 feet higher than planned. Of an estimated cubic yardage of 20,579 to be excavated between stations 33 and 52, in fact 9,787 yards were removed. It also appeared the south bank of the ditch, next to highway T, was steeper than the two-to-one slope (two feet laterally and one foot vertically) required by the specifications. Also in many places, mostly along the south bank, earth had caved into the ditch.
Prior to the adjourned board meeting engineer Murray asked an engineer named Barr from Minneapolis to investigate the part of lateral 1 in controversy and report to him the advisability of further cleaning it out or accepting the work as it was with revision of the contract price. Barr had previously worked for Rowat & Murray less than two years. Barr, with rather impressive qualifications, examined the work July 14 or 15 and wrote a 4-page typewritten report dated July 16 which was before the board and considered at its meeting.
Mr. Barr, defendants' principal witness at the trial in district court, recognized that somewhat less than half the planned excavation had been done on the west part of lateral 1, there were a number of cave-ins along the south bank and in places it was nearly vertical rather than a two-to-one slope. Barr also admitted the part of the ditch in controversy was not in a good state of repair when the contractor removed its draglines from the job.
It was Barr's opinion, however, expressed in his report and upon the trial that the main cause of these conditions was the unusual character of layers of clay soil through which lateral 1 was located, further excavation of the west end of the ditch in July, 1955, would only increase slipping of the banks and likelihood of damage to highway T, the work as done furnished adequate drainage for the district including an outlet for plaintiffs' tile, it was better for the landowners to accept the work on lateral 1 with a deduction of pay to the contractor than to excavate further, and if caving of the banks continues until the ditch does not operate satisfactorily he recommended placing an 18-inch tile in the ditch between stations 33 and 52 and backfilling it.
Engineer Murray accepted the views of Barr and in effect recommended their acceptance to defendant board in a report dated July 18. The board unanimously accepted the work upon the drainage district "per recommendations and report of the engineer" and ordered that final payment be made thereunder "per revised estimate as filed by the engineer." The contractor was thereafter paid for the amount of earth *733 actually excavated from lateral 1 as computed by the engineer. The revised estimate of excavation between stations 33 and 52 was 9787 yards. This was 10,792 yards less than originally estimated when the contract was let.
The trial court concluded there was no evidence to contradict that of engineer Barr or his recommendations to the board; the board acted in good faith on recommendation of competent engineers; to have completed the excavation at the upper end of lateral 1 would only have increased expense to the property owners with no benefit to them and added danger to highway T; lateral 1 furnished adequate drainage to the landowners and they were not prejudiced by abandoning excavation at the upper end; there was no evidence of fraud or connivance of the board members, the contractor or engineers and under the circumstances the board acted within its discretion in what it did on July 18.
There can be no doubt the contractor did not fully perform the contract according to plans and specifications on at least the west 1000 feet of lateral 1 in not excavating to the depth originally contemplated, in not leaving a two-to-one slope on the south bank, and in not keeping the ditch in good condition and repair until finally accepted by the district. The vital issue in the case is whether the board had the power under the circumstances, as the trial court held, to accept the work notwithstanding lack of full performance in the respects mentioned.
Plaintiffs contend the board was without power to take the action it did at the adjourned meeting and its mandatory duty was to proceed under sections 455.114.115 which provide:
"455.114 Abandonment of work. In case any contractor abandons or fails to proceed diligently and properly with the work before completion, or * * * fails to complete the same * * * according to the terms of the contract, the board shall make written demand on him and his surety to proceed with the work within ten days. * * *
"455.115 New contractsuit on bond. Unless the contractor or the surety on his bond shall appear and in good faith proceed to comply with the demand, and resume work under the contract within the time fixed, the board shall proceed to let contracts for the unfinished work in the same manner as original contracts, and apply all funds not paid to the original contractor toward the completion of the work, and if not sufficient for such purpose, may cause suit to be brought upon the bond of the defaulting contractor for the benefit of the district, and the amount of recovery thereon shall be credited to the district."
Defendants claim the board possessed what they call inherent authority to take the action complained of, as well as express authority therefor under section 455.69, with which they assertand plaintiffs denythere was substantial compliance. This section, passed by the 55th General Assembly in 1953, states, so far as applicable here:
"455.69 Change of conditionsmodification of plan. If, after the improvement has been finally located and before construction thereof has been completed, there has been a change of conditions of such nature that the plan of improvement as adopted should be modified or amended, the board may direct the engineer appointed under section 455.36 or another engineer, to make a report showing such changes or modifications of the plan of improvement as may be necessary to meet the change of conditions. Upon the filing of such report, the board shall have jurisdiction to adopt said modified or amended plan of improvement * * *."
I. We consider now whether the board proceeded in substantial compliance with section 455.69, heretofore quoted insofar as applicable here.
We have held that in the formation of a new drainage district the engineer's report *734 recommending it is jurisdictional and as to such matters the statutes are mandatory and must be strictly followed. Simpson v. Board of Supervisors, 180 Iowa 1330, 1337-1339, 162 N.W. 824. See also Hartshorn v. District Court, 142 Iowa 72, 81-82, 120 N. W. 479; Shaw v. Nelson, 150 Iowa 559, 129 N.W. 827; Estes v. Board, 204 Iowa 1043, 217 N.W. 81.
However, Johnson v. Monona-Harrison Drainage District, 246 Iowa 537, 547-51, 68 N.W.2d 517, 523-525, and Harris v. Board of Trustees, 244 Iowa 1169, 1173, 59 N.W. 2d 234, 236, point out that substantial compliance with statutory requirements is sufficient where it is proposed to repair or improve an existing district. See also Morrow v. Harrison County, 245 Iowa 725, 739-740, 64 N.W.2d 52, 61, and citations. We think therefore that substantial compliance with 455.69 is all that is required.
We cannot agree with defendants' argument that 455.69 does not require the board's direction to an engineer to make a report showing changes or modifications of the plan of improvement necessary to meet changed conditions and it is discretionary with the board whether to require such a report before adopting a modified plan. It is true the statute says "the board may direct the engineer * * * to make a report showing such changes." However, it also provides, "Upon the filing of such report, the board shall have jurisdiction to adopt said modified or amended plan."
The fair construction of 455.69 is that the board's discretion to require an engineer's report showing a modified plan is controlled by whether it deems it wise to consider any such modification. If it does, such a report is necessary. If it does not, none is called for. There is no object in requiring an engineer's report for a drainage improvement in the first instance if the board on its own motion, without a subsequent engineer's report, may change the plan at will. Several of our decisions recognize the importance of an engineer's report in public drainage matters as a basis for board action. See the precedents first cited herein, also Kelley v. Drainage District, 158 Iowa 735, 743-744, 138 N.W. 841.
Our conclusion that an engineer's report is a prerequisite to the board's adoption of a modified plan, notwithstanding use of the word "may" in 455.69, finds support in the rule that "may" is usually construed to mean "shall" when rights of the public or third persons depend upon the exercise of the power or performance of the duty to which it refers. School Twp. v. Nicholson, 227 Iowa 290, 298-299, 288 N.W. 123, and citations; Wisdom v. Board, 236 Iowa 669, 680, 19 N.W.2d 602, 608; Miller v. Schlereth, 151 Neb. 33, 36 N.W.2d 497, 506; 82 C.J.S. Statutes § 380a, p. 880. See also Wolf v. Lutheran Mutual Life Ins. Co., 236 Iowa 334, 340, 18 N.W.2d 804, 808.
However, we are required to give section 455.69 and other provisions of chapter 455 a liberal construction. Section 455.182; Johnson v. Monona-Harrison Drainage District, supra, 246 Iowa 537, 555, 68 N.W.2d 517, 527, and citations; Jerrel v. Board of Supervisors, 247 Iowa 339, 343, 73 N.W.2d 766, 768.
When this is done we think there was sufficient basis for the board to proceed under 455.69. We have referred to the unusual layers of soil encountered along lateral 1 and the danger to the adjoining highway from completing the excavation as originally planned. It was also discovered the elevation of a pond on plaintiffs' land about 500 feet northwest of the upper end of lateral 1 is in fact nearly five feet higher than shown on the original plans. The board could properly find these circumstances constituted such a change of conditions as 455.69 contemplates.
So far as shown the board did not formally designate engineers Murray or Barr to make a report showing such changes or modifications of the plan as might be necessary to meet the change of conditions. It seems probable Murray consulted the *735 board informally regarding his request to Barr to investigate and report conditions connected with the work on lateral 1. In any event it is quite clear the board ratified Murray's designation of Barr to make such investigation and report. And we think Barr's 4-page typewritten report, in which Murray concurred, that was before the board at its adjourned meeting was such a report as 455.69 calls for.
Filing the engineer's report seems to be the important requirement of the statute. Since Barr's report was before the board, together with the recommendation of both engineers, we are not prepared to hold there was not substantial compliance with 455.69 or that the board was without jurisdiction to change the plan of improvement to the extent of not requiring further work on lateral 1. In this connection it is perhaps of some significance that the board evidently had the advice of its attorney before taking action.
If, as we think, the board did not act in excess of its powers there is insufficient basis for holding there was an abuse of discretion in the action it took. Although our review is de novo (Code section 455.101; Rule 334, Rules of Civil Procedure, 58 I.C.A.; Incorporated Town of Carpenter v. Joint Drainage District, 198 Iowa 182, 190, 197 N.W. 656; Johnson v. Monona-Harrison Drainage District, supra, 246 Iowa 537, 547, 68 N.W.2d 517, 523) the trial court's finding the board acted within its discretion is entitled to weight. Johnson v. Monona-Harrison Drainage District, supra, 246 Iowa 537, 553, 68 N.W.2d 517, 526, and citation.
We have said at least three times in cases generally like this that the requirements imposed by statute upon an inferior tribunal should not be too technically construed, lest its efficiency be wholly paralyzed. In re County Drains v. Long, 151 Iowa 47, 50, 130 N.W. 152, 153; Morrow v. Harrison County, supra, 245 Iowa 725, 740, 64 N.W.2d 52, 61; Johnson v. Monona-Harrison Drainage Dist., supra, 246 Iowa 537, 550, 68 N.W.2d 517, 525. We have also said proceedings before a board of supervisors and like tribunals are necessarily informal and courts are not disposed to review them with technical strictness. Harris v. Board of Supervisors, supra, 244 Iowa 1169, 1176, 59 N.W.2d 234, 238, and citation.
The Morrow and Johnson cases, supra, lend support to our conclusion that Barr's report substantially complied with the requirement of 455.69 for an engineer's report. See also Board of Trustees v. Iowa Natural Resources Council, 247 Iowa 1244, 1253, 78 N.W.2d 798, 804; Kelley v. Drainage District, supra, 158 Iowa 735, 743, 138 N.W. 841; Lyon v. Sac County, 155 Iowa 367, 375-376, 136 N.W. 324; In the Matter of Drainage District No. 3, Hardin County, 146 Iowa 564, 570-572, 123 N.W. 1059.
That the board's failure to direct an engineer to make a report showing changes or modifications of the plan of improvement did not, in view of its subsequent approval of Barr's report, deprive it of jurisdiction to take the action it did, finds support by analogy in In re County Drains v. Long, supra, 151 Iowa 47, 49-50, 130 N.W. 152, 153, and Kelley v. Drainage District, supra, 158 Iowa 735, 744, 138 N.W. 841.
Our conclusion that the board's final action was not in excess of its powers accords with language in Gordon Construction Co. v. Board of Supervisors, 246 Iowa 1368, 1373, 72 N.W.2d 551, 554-555. There, after the contract for the improvement was made, it was discovered a county employee had made an error in measuring an existing tile line as 14, instead of 18, inches. The engineer then recommended to the board that a certain lateral included in the original plan be abandoned and the board eliminated it from the improvement. Without discussing the effect of section 455.69 the opinion holds the board had the right to take such action. "Our conclusion * * * is that the board's order eliminating lateral 3 was not void. It was taken in the best interest of the landowners * * *." At page 1373 of 246 Iowa, at page 555 of 72 N.W.2d.
*736 II. Our holding in Division I is determinative of the merits of the appeal and renders discussion of other contentions unnecessary except, however, that a procedural question raised by plaintiffs, toward the end of their opening brief, should be considered.
After plaintiffs appealed to the district court from the board's final action they filed their petition as required by Code section 455.96. Section 455.97 provides, "It shall not be necessary for the appellees to file an answer to the petition unless some affirmative defense is made thereto, but they may do so." Defendants filed no answer here. Plaintiffs contend the board relies upon an affirmative defense which should have been pleadedthat the original plan of improvement was changed by eliminating the unfinished work on lateral 1.
It may be conceded this is an affirmative defense to the petition which should have been pleaded in the trial court. We think, however, this fact is not of controlling importance upon this appeal, triable de novo here, in view of the trial court's decision and the contentions plaintiffs themselves have advanced and asked us to decide.
The second proposition relied on in plaintiffs' opening brief is in part, "The board had no jurisdiction and no legal authority to accept an unperformed contract." Included in their third proposition is the assertion "The board did not act under section 455.69 to `adopt a modified or amended plan.'" Two other propositions contain virtual repetitions of this assertion. Plaintiffs' third brief point is "the board did not change or modify the original plan in the only way it could be done, in accordance with section 455.69." Defendants have controverted these propositions and this brief point and both sides have fully argued them. We therefore deem the question of substantial compliance with section 455.69 properly before us.
It is true that equity cases are generally tried in the district court and this court upon the issues raised by the pleadings. But it is well settled that where parties proceed without objection to try an issue, even though not presented by the pleadings, it amounts to consent to try such issue and it is rightfully in the case. In re Adoption of Karns, 236 Iowa 932, 939, 20 N.W. 2d 474, 478, and citations; Cuthbertson v. Harter Post No. 839, 245 Iowa 922, 929, 65 N.W.2d 83, 88, and citations. See also Board of Supervisors v. Board of Trustees, 221 Iowa 337, 342, 264 N.W. 702.
While these precedents involve voluntary trial in the district court of an unpleaded issue we see no reason why they are not applicable to voluntary trial in this court of an issue not pleaded in the district court. At least an appellant who argues and submits to us such an issue should not complain if we decide it.
In re Adoption of Karns, supra, [236 Iowa 932, 20 N.W.2d 478] states: "Since plaintiff voluntarily litigated the issue, he is in no position to assert the court's decision was outside the issues" (citations). And Cuthbertson v. Harter Post No. 839, supra, [245 Iowa 922, 65 N.W.2d 88] uses this language which seems pertinent here: "We might hold this issue was not properly pleaded but inasmuch as the plaintiff sought to meet it we are disposed to hold it was made an issue by his action. We have held where a party consents to try an issue it is therefore rightfully in the case."
In Board of Supervisors v. Board of Trustees, supra, 221 Iowa 337, 342, 264 N.W. 702, no petition was filed in the district court upon appeal in a drainage controversy. However, there was no objection raised on the ground no petition was filed. Upon appeal to this court from the district court's decree we decided the case on its merits.
Our early case of Austin & Spicer v. Carpenter, 2 G. Greene 131, 134-135, says "On appeal, a court of equity * * * will examine into the merits of the case for the purpose of administering justice * * *. All appeals in chancery must be tried de novo, the same as if this court *737 had original jurisdiction, * * *." All or part of this language has been repeated several times, Taylor v. Lindemann, 211 Iowa 1122, 1127, 235 N.W. 310; Kurth v. Continental Life Ins. Co., 211 Iowa 736, 743, 234 N.W. 201; Manning v. Ottumwa Auto Co., 210 Iowa 1182, 1187, 232 N.W. 501.
5 C.J.S. Appeal and Error § 1453, states: "* * * an appellate court * * * may give judgment upon all points properly presented for decision." Id., § 1475, p. 735, says, "On an appeal on questions of law and fact, however, the appellate court will determine the issues as if the case had originated in that court." And 3 Am.Jur., Appeal and Error, section 812, page 353, states: "Ordinarily, a question determined by the trial court and presented in the briefs of both parties to the appellate court is properly before the latter court."
Affirmed.
All Justices concur except SMITH, J., not sitting.