BOARD OF TRUSTEES OF FARMERS DRAINAGE DISTRICT, BOARD OF TRUSTEES OF GARRETSON DRAINAGE DISTRICT and BOARD OF SUPERVISORS OF WOODBURY COUNTY, appellees, v. IOWA NATURAL RESOURCES COUNCIL, appellant; BOARD OF TRUSTEES OF NAGEL DRAINAGE DISTRICT et al., intervenors-appellees.

No. 48856.

(Reported in 78 N.W.2d 798)

October 16, 1956.

Dayton Countryman, Attorney General, and Kent Emery, Assistant Attorney General, for appellant.

Kindig & Beebe, of Sioux City, for appellee Board of Trustees of Farmers Drainage District.

Maurice E. Rawlings, of Sioux City, for appellee Board of Trustees of Garretson Drainage District.

Robert B. Pike, of Sioux City, for appellee Board of Supervisors of Woodbury County.

Prichard & Prichard, of Onawa, for intervenors-appellees.

GARFIELD, J.—This is another of many controversies submitted to us involving affairs of Monona-Harrison drainage district in western Iowa. This action grew out of an order by defendant Iowa Natural Resources Council disapproving the district's application for approval of a plan known as the Gaynor plan for certain repairs and improvements of the Monona-Harrison drains.

Pursuant to section 455A.23, Code, 1954, the board of trustees of the district appealed to the district court from the council's order (Cause No. 16057). This action in equity was also commenced against the council by trustees, respectively, of Farmers drainage district and Garretson drainage district and Woodbury county supervisors for a declaration as to defendant's power under Code chapter 455A to disapprove such an application as that made by Monona-Harrison district (Cause No. 16125).

Farmers and Garretson districts are so-called upper districts which, together with Woodbury County, have been held liable for part of the cost of maintaining the drains in Monona-Harrison district which afford an outlet for the upper districts. No question is raised as to the standing of these plaintiffs to maintain cause 16125.

The two causes were consolidated for trial as in equity. In No. 16057 the district court found defendant's order of disapproval was unjust, unreasonable and not supported by the evidence and ordered defendant to approve the application of Monona-Harrison district. (See Code section 455A.23.) In cause 16125 the court held the only power conferred upon defendant to approve or disapprove such an application by a drainage

district is that conferred by the third paragraph of Code section 455A.19 based upon defendant's determination whether the proposed work "will adversely affect the efficiency of or unduly restrict the capacity of the floodway." The court also held in effect that section 455A.22 was not applicable to such a project as the Gaynor plan and conferred no authority upon defendant it might exercise in passing upon Monona-Harrison's application.

Defendant council appealed to us from the decree in each case. Four days before submission of the appeals the trustees of Monona-Harrison district moved to dismiss the appeal in 16057 as to them because of the council's failure to file copy of the printed record, and copies of defendant's brief and argument, for their attorneys as required by Rules of Civil Procedure 342(a) and 343. No one objected to sustaining the motion and we sustained it. This leaves the declaratory-judgment action, No. 16125, for our determination.

The Gaynor plan is fully explained in Johnson v. Monona-Harrison Drainage District, 246 Iowa 537, 68 N.W.2d 517. We there affirmed a decree dismissing an appeal by landowners from an order of the trustees authorizing the repairs and improvements contemplated by the Gaynor plan. We will here refer as briefly as possible to the plan and the circumstances which led to its adoption.

The Little Sioux River has its source in southern Minnesota, flows generally south and southwest through Woodbury and Monona Counties and outlets in the Missouri River in Harrison County. The main Monona-Harrison drainage ditch in those two counties generally parallels the Little Sioux to the west thereof. At a point near the town of Turin in Monona County where the river and ditch are a little less than one-fourth mile apart an east-and-west ditch was built between the two, generally perpendicular to each. It is known as the equalizer. The theory behind its construction seems to have been that when water was high in the Little Sioux part of the water would be diverted through the equalizer into the Monona-Harrison ditch. Also that when water was high in that ditch part of it would be diverted through the equalizer into the river.

The equalizer ditch did not function just as planned. Instead, ninety per cent or more of the water that comes down

the Little Sioux to the equalizer flows west through it into the Monona-Harrison main ditch but water from that ditch does not flow east through the equalizer into the river. South of the equalizer the bed of the Little Sioux has filled with silt and vegetation until the channel has largely disappeared. This has placed a heavier burden on the Monona-Harrison ditch than it can bear.

Mr. Gaynor, engineer for the district, evolved a plan for cleaning out the channel of the Little Sioux south of the equalizer, digging some straight cutoff ditches at places where the river bed makes some U turns and installing a spillway at the east end of the equalizer. Purpose of the spillway is to confine the water coming down the Little Sioux to the channel as cleaned and straightened except when the water is high enough to flow over the spillway into the equalizer. These are the main features of the Gaynor plan. In 1953 it was estimated the cost of carrying out the plan would be in the neighborhood of $500,000.

Trustees of Monona-Harrison district eventually approved the plan. April 14, 1953, the district made application to defendant council for its approval of the plan. After several council meetings at which interested persons appeared to support or oppose the plan, defendant finally disapproved it by order sent attorneys for the drainage district March 17, 1954. This order led to the appeal by the district and the declaratory-judgment action by trustees of the two upper districts and Woodbury County supervisors. Trustees of a third upper drainage district, the Nagel district, intervened in this latter action on the side of plaintiffs.

Defendant council was created by chapter 203, Acts of Fifty-third General Assembly, approved March 31, effective April 16, 1949, chapter 455A, Codes 1950, 1954. It consists of seven members appointed by the governor of the state with the approval of the senate (section 455A.4). It is required to meet four times a year and at such other times as it deems necessary (455A.8). The declaration of policy in the Act (section 455A.2) states it is the council's "duty and authority to establish and enforce an appropriate comprehensive state-wide plan for the control of water and the protection of the surface and underground water resources of the state." See also section 455A.17.

The council is given the power of eminent domain (455A.15). It has jurisdiction over the public and private waters in the state and lands adjacent thereto necessary for carrying out the provisions of the chapter. It shall "adopt and establish a comprehensive plan for flood control for all the areas of the state subject to floods; and determine the best and most practical method and manner of establishing and constructing the necessary flood control works. The council may construct flood control works or any part thereof" (455A.18).

The third paragraph of section 455A.19 provides: "In the event any person desires to erect, make, use or maintain * * * a structure, dam, obstruction, deposit or excavation * * * in or on any floodway, and it is uncertain as to whether it will adversely affect the efficiency of or unduly restrict the capacity of the floodway, such person may file a verified written application with the council, setting forth the material facts, and the council on hearing, shall enter an order, determining the fact and permitting or prohibiting the same."

As previously indicated the trial court held the only power chapter 455A confers on defendant to approve or disapprove such a project as the Gaynor plan is that found in the language just quoted. Also that "the fact" the council is to determine, where such an application is made to it, is whether the project "will adversely affect the efficiency of or unduly restrict the capacity of the floodway." Plaintiffs and intervenor have accepted this holding. Defendant of course challenges it. "Person", as used in chapter 455A, includes a drainage district (455A.1).

The only provision of chapter 455A other than section 455A.19 it may be claimed expressly confers power on defendant to disapprove such a project as the Gaynor plan is section 455A.22. The principal question before us seems to be whether A.22 confers such power. Stated differently, is 455A.22 applicable to the situation we have here? As indicated, the district court held 455A.22 does not apply here. Defendant not only disputes this view but contends in effect its power is even broader than that expressly conferred by 455A.22.

This section states: "All works of any nature for flood control in the state, which are hereafter established and con-

structed, shall be co-ordinated in design, construction and operation, according to sound and accepted engineering practice so as to effect the best flood control obtainable throughout the state. No person shall construct or install any works of any nature for flood control unless and until the proposed works and the plans and specifications therefor are approved by the council. The interested persons shall file a verified written application with the council therefor, and the council on hearing shall consider all the pertinent facts relating to the proposed works which will affect flood control in the state and shall determine whether the proposed works in the plans and specifications will be in aid of and acceptable as part of, or will adversely affect and interfere with flood control in the state, and shall enter an order approving or disapproving the application, plans and specifications. In the event of disapproval, the order shall set forth the objectionable features so that the proposed works and the plans and specifications therefor may be corrected or adjusted to obtain the approval of the council.

"The provisions of this section shall apply to all drainage districts * * *."

The question the council determines under 455A.22 is "whether the proposed works in the plans and specifications will be in aid of and acceptable as part of, or will adversely affect and interfere with flood control in the state."

Section 455A.24 is also of some importance here. It provides: "Executive prerogatives. The council shall have no executive prerogatives outside of its own duties and functions as set out by this chapter and shall not disturb the work, functions or authority of any of the several state or local agencies and institutions, provided the powers conferred upon the council by this chapter shall not be exercised by any other of the agencies or institutions."

In seeking the meaning of chapter 455A in the respect in controversy the entire Act and other related statutes should be considered. Davis v. Davis, 246 Iowa 262, 274, 67 N.W.2d 566, 573, and citations. See also Everding v. Board of Education, 247 Iowa 743, 747, 76 N.W.2d 205, 208, and citations.

Thus in determining the powers chapter 455A confers on defendant to approve or disapprove such a project as the Gaynor

plan consideration should be given the statute under which the Monona-Harrison trustees proceeded in authorizing it. It is section 455.135, also passed by the Fifty-third General Assembly, as part of chapter 202, approved March 9, 1949. Since the Act, unlike chapter 203 (Code chapter 455A), contained no publication clause it took effect July 4, 1949. Section 455.135 is too long to set out here. Parts of it are quoted in Morrow v. Harrison County, 245 Iowa 725, 734, 64 N.W.2d 52, 57, 58; Johnson v. Monona-Harrison Drainage District, supra, 246 Iowa 537, 552, 553, 68 N.W.2d 517, 526, and Jerrel v. Board of Supervisors, 247 Iowa 339, 342, 343, 73 N.W.2d 766, 768.

The present section 455.135 is a comprehensive provision imposing the mandatory duty on trustees of a drainage district to keep its drains in repair and authorizing it to "order done whatever is necessary to restore or maintain" the "improvement in its original efficiency or capacity * * *." We have held several times this duty of a board to keep the drains in repair may be enforced by mandamus. Morrow case, supra, and citations page 733 of 245 Iowa, page 57 of 64 N.W.2d; Johnson case, supra, at page 552 of 246 Iowa, page 525 of 68 N.W.2d.

The Johnson decision also holds section 455.135 empowered the Monona-Harrison board to authorize carrying out of the Gaynor plan (defendant concedes this much although it contends its approval must be had) and decides the plan is more in the nature of a repair than a new improvement.

Section 462.27 is also worthy of consideration. It states in part: "Trustees shall have control, supervision, and management of the district * * *."

Nothing in chapter 455A expressly repeals or amends section 455.135, under which the trustees authorized the Gaynor plan to be carried out, or any other provision of chapter 455. The effect of defendant's argument is that chapter 455A, especially section 455A.22, repeals by implication, at least in part, section 455.135.

Courts do not favor and will not uphold repeals by implication unless the intent to repeal clearly and unmistakably appears from the language used and such a holding is absolutely necessary. The general rule is that if by any fair and reasonable

1252

construction two statutes dealing with the same subject matter may be reconciled both shall stand. Robbins v. Beatty, 246 Iowa 80, 86, 67 N.W.2d 12, 15, and citations; McGraw v. Seigel, 221 Iowa 127, 131, 263 N.W. 553, 106 A. L. R. 1035, 1038; Fitzgerald v. State, 220 Iowa 547, 552–554, 260 N.W. 681; Iowa Electric Co. v. Scott, 206 Iowa 1217, 1222, 220 N.W. 333.

■ The rule that courts do not favor repeals by implication has special application to important public statutes of long standing. Robbins v. Beatty, supra, and citations. Section 455.135 must be regarded as such a statute. While the Fifty-third General Assembly rewrote it to make it clearly broader than its predecessor statutes, it is an enlargement of a law enacted by the Thirtieth General Assembly in 1904 (chapter 68, section 22) which made it the duty of the board of supervisors to keep a drainage district in repair. Of course the Little Sioux River is part of the drainage system of Monona-Harrison district. Johnson v. Monona-Harrison Drainage District, supra, 246 Iowa 537, 552, 68 N.W.2d 517, 525, and citation.

■ We think the Fifty-third General Assembly which enacted Code chapter 455A and rewrote section 455.135 to broaden it intended both enactments to stand. They were both passed in the same month, section 455.135 as part of chapter 202, and Code chapter 455A as chapter 203, of the same session laws. This seems to be a fair and reasonable construction of both enactments. We agree with the trial court section 455A.22 confers no power upon defendant, in addition to that conferred by the third paragraph of section 455A.19, to disapprove such a project as the Gaynor plan, in the nature of a repair within the meaning of section 455.135.

■ Section 455A.22 purports to apply only to "All works of any nature for flood control * * * which are hereafter established and constructed * * *." The Gaynor plan seems to be primarily a project to improve drainage in the district. Flood control seems only incidentally involved. We realize a hard and fast line cannot be drawn between drainage and flood control. In any event the plan is not a work for flood control "hereafter established." Monona-Harrison district was established 45 years, and the main ditch and (later) the equalizer were constructed

more than 30 years, before chapter 455A took effect. Purpose of the Gaynor plan is merely to restore the main ditch and Little Sioux to their original efficiency as parts of the drainage system.

Section 455A.22 contemplates that all works for flood control "shall be co-ordinated in design, construction and operation" presumably with all other such works in the state. The Monona-Harrison drainage system was designed prior to its construction and has long been in operation. We think the legislature did not intend 455A.22 to require a change in the design, construction and operation of an existing county drainage system, or a co-ordination in such respects with other such systems, as a prerequisite to repairing it to restore its efficiency.

Section 455A.22 further contemplates that "the works" it provides defendant shall approve are those for which plans and specifications are prepared. While plans and specifications for the Gaynor plan were made and submitted to defendant there is no requirement in section 455.135 that plans and specifications be prepared for repairs the trustees authorize. The section requires merely that for improvements which differ from repairs the board "may appoint an engineer to make such surveys as seem appropriate to determine the nature and extent of such improvements, and to file a report showing what improvements are recommended and their estimated costs, * * *."

We have held a profile and sketch which were not elaborate were a sufficient compliance with the above requirement for a report. Morrow v. Harrison County, supra, 245 Iowa 725, 739, 64 N.W.2d 52, 61. See also Johnson v. Monona-Harrison Drainage District, supra, 246 Iowa 537, 550, 551, 68 N.W.2d 517, 524, 525.

The objecting landowners in the Johnson case contended that failure of the trustees to secure prior approval by the present defendant of the Gaynor plan was fatal to their authorization of the work. We rejected the contention (page 556 of 246 Iowa, page 528 of 68 N.W.2d). We had no thought of holding section 455A.22 empowered the resources council to disapprove the Gaynor plan and the objecting landowners did not argue A.22 was applicable.

By way of summary it is our view the only power defendant has under chapter 455A to approve or disapprove repairs of an existing county drain authorized by the trustees of the district pursuant to section 455.135 is the power conferred by the third paragraph of section 455A.19. And defendant's order under A.19 approving or disapproving such a project depends upon its determination of the fact "whether it will adversely affect the efficiency of or unduly restrict the capacity of the floodway." We are not required to decide other questions such as the scope of defendant's power of approval or disapproval where the drainage project is a new one or amounts to more than repairs.

Nothing herein is intended to cast reflection upon members of defendant council. The record indicates they are men of high caliber who acted conscientiously in the matter in controversy.— Affirmed.

All JUSTICES concur except PETERSON, J., who takes no part.