**POLK COUNTY DRAINAGE DISTRICT FOUR and Polk County Board of Supervisors as Trustees of Drainage District Four, Appellants,**

**Virginia Goeppinger, Intervenor-Appellant,**

v.

**IOWA NATURAL RESOURCES COUNCIL, Appellee.**

No. 84–1418.

Supreme Court of Iowa.

Nov. 13, 1985.

James A. Smith, Co. Atty., and David W. Hibbard, Asst. Co. Atty., for appellants.

Thomas J. Miller, Atty. Gen., and John P. Sarcone and Eliza Ovrom, Asst. Attys. Gen., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, SCHULTZ, and WOLLE, JJ.

UHLENHOPP, Justice.

This appeal involves a question of the jurisdiction of the Iowa Natural Resources Council (INRC) with respect to a project of a drainage district. The members of the Polk County Board of Supervisors as Trustees of Drainage District Four together with an intervening landowner appeal from the district court's affirmance on administrative appeal of a decision of INRC. The order of INRC denied the trustees' application for a permit to straighten and dredge

an old Skunk River channel and required the trustees to restore the flow to the channel where cutoffs had already been constructed. On appeal to this court, the trustees and intervenor present the single issue of whether INRC has jurisdiction. The merits of INRC's decision are not before us.

The drainage district, established in 1907, consists in part of a ditch which outlets into a remnant of the Skunk River channel. This remnant ceased to be a part of the Skunk River when a new channel for the river was established in approximately 1919. The remnant meanders through the Chichaqua Wildlife Habitat, a preserve owned by Polk County and managed by its Conservation Board; it empties into a ditch of Drainage District Fifty-two; and it lies outside the geographic boundaries of Drainage Districts Four and Fifty-two. The remnant is one of the last vestiges of the original Skunk River. The habitat was established to preserve the area in its natural state. A combination of inland fresh water and forested wetland, the area is a unique, publicly-owned haven for a large variety of birds and mammals.

For a number of years the trustees have been aware of drainage problems in District Four. After studying alternative solutions, the trustees adopted a plan which involved dredging accumulated silt from the Skunk River remnant, straightening the oxbows, and constructing earthen barriers at both ends of the cutoff portions, thus creating ponds. See accompanying rough sketch.

The trustees did not make application to INRC for approval of their plan before commencing work in 1981. In March 1982, after three southern oxbows had been cut off and a new channel had been dug at those places, INRC learned of the project and investigated. It notified the trustees that the project was under INRC's jurisdiction. The trustees then halted work and submitted an application and engineering plans to INRC under section 455A.33(3) of the Iowa Code of 1981, asking for a permit to excavate on the floodplain.

On March 14, 1983, following a lengthy contested-case hearing, INRC denied the application and ordered the trustees to restore the flow to the remnant and to fill and seed the newly created channel. INRC held it had jurisdiction, and found that the project violated its rule limiting the reduction in length of a rural stream to twenty-five percent of the length of the original channel. It also found that the project would have a "significant adverse effect on fish and wildlife habitat and public rights to use of the stream" and would "adversely affect the control, allocation, utilization and protection of the water resources of the state in violation of Iowa Code section 455A.33(1)." It found the channel change was not the only reasonable and practicable alternative:

DRAINAGE DISTRICT #4

← DRAINAGE DITCH #4

OLD SKUNK RIVER CHANNEL

CHICHAQUA WILDLIFE AREA

N

PROPOSED CHANGE IN OLD CHANNEL

DRAINAGE DITCH #52

[T]he Old Channel ... does not cause the siltation problems two or three miles upstream in Drainage District 4. The land in Drainage District 4 is low and swampy, and the majority of sediment in the ditch comes from upstream in the drainage district. Due to questionable data in the 1962 topographic map, it is quite possible that siltation in the Chichaqua area is not as severe as the applicant believes. The applicant has not dredged or maintained Ditch 4 for over 30 years. We do not consider channelizing the Old Channel of the Skunk River, which lies entirely downstream from Ditch 4, to be the only reasonable and practicable alternative.

On rehearing, the agency affirmed its order on May 2, 1983.

The trustees petitioned for judicial review. After hearing, the district court affirmed on August 3, 1984. The court addressed nineteen contentions by the trustees, but summarized them thus:

(1) That the INRC does not possess statutory authority to prevent the Drainage District from undertaking this kind of project;

(2) That if the relevant statutes and regulations do grant the INRC this type of authority, they do so in an unconstitutionally vague and unstandardized manner; and

(3) Even assuming the constitutionality of the relevant laws and regulations and the propriety of their application to this type of drainage district's activity, the application here is not supported by substantial evidence.

Only the first of these contentions is before us.

**I.** *Scope of review.* The Iowa Administrative Procedure Act governs judicial review of final agency action. Iowa Code § 17A.19 (1983). *See also* § 455A.37 ("Judicial review of action of the council may be sought in accordance with the terms of the Iowa Administrative Procedure Act."). Section 17A.20 of the Act provides for review by this court of a judgment of the district court; our review is confined to the correction of errors of law made by that court. *Jackson County Public Hospital v. Public Employment Relations Board,* 280 N.W.2d 426, 429 (Iowa 1979). In deciding whether the district court correctly applied the law we look to the standards of section 17A.19(8). *Id.* at 429–30. "We give weight to the [INRC's] construction of the statute although we are not bound thereby." *Woodbine Community School District v. Public Employment Relations Board,* 316 N.W.2d 862, 864 (Iowa 1982).

**II.** *Jurisdiction of INRC.* This contested case proceeding, occurring in October 1982, is governed by chapter 455A of the Iowa Code of 1981 (our references are to that Code). We note that effective July 1, 1983, the General Assembly merged INRC with the Iowa Department of Environmental Quality to create a new agency, the Iowa Department of Water, Air, and Waste Management. Chapter 455B of the current Code now governs the jurisdiction of that agency. 1982 Iowa Acts ch. 1199, § 96(1).

INRC asserted jurisdiction over the present project on the basis of the permit requirements of the third paragraph in section 455A.33 of the 1981 Code. This provision was enacted originally in 1949, 1949 Iowa Acts ch. 203, § 19, and came into its 1981 form in 1978. 1978 Iowa Acts ch. 1160, § 3. It provides:

In the event any person desires to erect or make, or to suffer or permit, a structure, dam, obstruction, deposit or excavation ... to be erected, made, used or maintained in or on any floodway or flood plains, such person shall file a verified written application with the director, setting forth the material facts.... [A]fter an investigation or a public hearing ... [INRC] shall determine the fact and approve or deny the application....

Section 455A.1 specifically includes drainage districts within the definition of "person". "Floodway" includes "the channel of a river or stream" and "flood plains" is the area adjoining a river or stream. § 455A.1.

The trustees contend that INRC does not have jurisdiction over the project because

the work is governed by section 455.135 of the chapter on levy and drainage districts. That section includes the following provision enacted originally in 1904 (1904 Iowa Acts ch. 68, § 22) and placed in its 1981 form in 1969 (1969 Iowa Acts ch. 260, § 16):

> The board at any time on its own motion, without notice, may order done whatever is necessary to restore or maintain a drainage or levee improvement in its original efficiency or capacity, and for that purpose may remove silt and debris, repair any damaged structures, remove weeds and other vegetable growth, and whatever else may be needed to restore or maintain such efficiency or capacity.

The trustees also rely on sections 455.1 and .5:

> The board of supervisors of any county shall have jurisdiction, power, and authority at any regular, special, or adjourned session to establish a drainage district or districts, and to locate and establish levees, and cause to be constructed as hereinafter provided any levee, ditch, drain, or watercourse, or settling basins in connection therewith, or to straighten, widen, deepen, or change any natural watercourse, in such county, whenever the same will be of public utility or conducive to the public health, convenience or welfare.
>
> . . . .
>
> The levees, ditches, or drains herein provided for shall, so far as practicable, be surveyed and located along the general course of the natural streams and watercourses or in the general course of natural drainage of the lands of said district; but where it will be more economical or practicable such ditch or drain need not follow the course of such natural streams, watercourses, or course of natural drainage, but may straighten, shorten, or change the course of any natural stream, watercourse, or general course of drainage.

The trustees contend that they have complete autonomy to undertake a project to restore the efficiency of a drainage ditch under these sections, and thus may deepen and straighten the Skunk River remnant. They argue that section 455A.33 does not apply to projects authorized pursuant to section 455.135.

INRC does not dispute the trustees' jurisdiction to order the project in question pursuant to section 455.135. It claims however that section 455.135 is not in conflict with 455A.33. Its position is that the latter section gives it concurrent jurisdiction over the project and requires the trustees to follow the procedure therein provided whether the project is characterized as a repair or an improvement.

Both the trustees and INRC rely on this court's opinion in *Board of Trustees of Farmers Drainage District v. Iowa Natural Resources Council*, 247 Iowa 1244, 78 N.W.2d 798 (1956). In *Farmers* INRC attempted to exercise jurisdiction over the straightening of a channel by a drainage district. It proceeded, however, under a different provision, section 455A.22 of the 1954 Code, applicable only to "flood control works." This court held that where the purpose of the project was to improve drainage and flood control was only incidentally involved, and where the drainage ditch was constructed before the effective date of chapter 455A, INRC did not have jurisdiction. *Id.* at 1253, 78 N.W.2d at 803–04. INRC did not assert jurisdiction under the third paragraph of section 455A.19— the predecessor to the corresponding paragraph of section 455A.33, involved here. This court stated that INRC would have jurisdiction under that paragraph. Summarizing, the court concluded:

> [T]he only power defendant [INRC] has under chapter 455A to approve or disapprove repairs of an existing county drain authorized by the trustees of the district pursuant to section 455.135 is the power conferred by the third paragraph of section 455A.19. And defendant's order under 455A.19 approving or disapproving such a project depends upon its determination of the fact "whether it will adversely affect the efficiency of or un-

duly restrict the capacity of the flood-way."

*Id.* at 1254, 78 N.W.2d at 804 (quoting from section 455A.19 of the Code of 1954).

■ We adhere to the view expressed in the quotation from *Farmers,* and hold that with a project such as the present one the district trustees and INRC have concurrent powers under sections 455.135 and 455A.33. The trustees have authority to decide whether to initiate proceedings for a project, including repair of an outlet outside the district. But INRC has authority to decide whether to grant or refuse a permit for the project, whether within or without the district.

■ We arrive at this conclusion for two principal reasons. One is the general rule that when two statutes deal with the same subject, courts endeavor to give effect to both enactments. As this court stated in *Baird v. Webster City,* 256 Iowa 1097, 1113, 130 N.W.2d 432, 441–42 (1964):

The general rule is, prior and later statutes dealing with the same subject matter although in apparent conflict, should, as far as reasonably possible be construed in harmony with each other so as to allow both to stand and to give force and effect to each.

*See also* 73 Am.Jur.2d *Statutes* § 255 (1974); 82 C.J.S. Statutes § 362 (1953). Here section 455.135 gives trustees power to repair, but section 455A.33(3) gives INRC power to grant or deny a permit.

As to our other reason, the General Assembly enacted our drainage legislation about a century ago, mainly to render wetlands tillable for agricultural purposes. Iowa Code title X, ch. 2 (1873). Approximately seventy-five years later the Assembly enacted our environmental legislation having to do with the water resources of the state. Iowa Code ch. 455A (1950). Both chapter 455 relating to drainage and chapter 455A relating to the environment involve important concerns of the state. Courts should liberally construe and apply both of these chapters, to further the objectives of the legislature. *Thorson v. Board of Supervisors,* 249 Iowa 1088, 1095, 90 N.W.2d 730, 734 (1958) (drainage legislation to receive "a liberal construction"); 39A C.J.S. *Health & Environment* § 116 (1976) ("Environmental policy statutes are required to be construed liberally in the light of their beneficent purposes."). So construing both of these statutes, we believe the legislature intended that drainage trustees and INRC have coordinate responsibility and jurisdiction.

III. *Statutory changes.* Since the time of *Farmers,* the Assembly has strenghtened the position of INRC. When that case was decided, section 455A.19 (later section 455A.33) was permissive. It provided that if a person desiring to construct a project "is uncertain as to whether it will adversely affect the efficiency" of a floodway, such person "may" file an application with the council. Iowa Code § 455A.19 (1954). The section has been enlarged to encompass floodplains, and substitutes "shall" for "may". Iowa Code § 455A.33(3) (1981). In addition, the clause relating to uncertainty of the person is eliminated; the person contemplating the project *must* apply for a permit. *See* 1978 Iowa Acts ch. 1160, § 3.

The standards on the merits which INRC applied under the Code of 1981 are also broader than at the time of the *Farmers* case. As shown by our quotation from *Farmers,* the standard for approving or disapproving a project at that time was "whether it will adversely affect the efficiency of or unduly restrict the capacity of the floodway." In the 1981 Code the standard is whether the project "will adversely affect the efficiency of or unduly restrict the capacity of the floodway, adversely affect the control, development, protection, allocation, or utilization of the water resources of the state, or adversely affect or interfere with the state comprehensive plan for water resources, or an approved local water resources plan...." § 455A.33(1).

We uphold the district court's decision that INRC has jurisdiction.

AFFIRMED.