**Dennis L. LOFTIS, Appellee,**

v.

**IOWA DEPARTMENT OF AGRICULTURE AND LAND STEWARDSHIP, Appellant.**

**No. 89–0812.**

Court of Appeals of Iowa.

June 26, 1990.

---

Thomas J. Miller, Atty. Gen., and Lynette A.F. Donner, Asst. Atty. Gen., for appellant.

Rick L. Olson, Des Moines, for appellee.

Heard by OXBERGER, C.J., and HAYDEN and SACKETT, JJ.

HAYDEN, Judge.

The Iowa Department of Agriculture and Land Stewardship (Department) rejected Loftis' application to register a horse as "Iowa foaled" Loftis had not filed a Mare Status Report before foaling. This report was required so an investigator could inspect the mare and colt while the colt is at the mare's side.

The trial court ruled the colt, "Lenny's Reign," met the standards of Iowa-bred and directed the Department to register Lenny's Reign as an Iowa-foaled horse. In arriving at this decision, the trial court found the administrative law judge's decision was not supported by substantial evidence and it was arbitrary and capricious. The administrative law judge ruled the Department correctly interpreted its rules in denying Loftis' application and sustained its action. The district court reversed the agency's decision. The Department appeals.

The facts of this case are not in dispute.

On April 18, 1972, a filly named "Ja–Girl" was foaled on the Beatty Thoroughbred Farm. On January 21, 1974, Ja–Girl was registered by name with the Jockey Club. On April 20 and 22, 1985, Ja–Girl, then owned by Don Beatty, was bred to "Utmost," an Iowa-registered stallion. On June 12, 1985, Ja–Girl, then in foal, was sold to Robert G. Bryant. On July 25, 1985, a "Record of Mares Bred," Form S–3, was filed with the Department, indicating Ja–Girl had been so bred. On November 5, 1985, Ja–Girl's blood was typed. On January 10, 1986, while still in foal, Ja–Girl was sold to Dennis L. Loftis of Walnut, Iowa.

The transfer was recorded on the Jockey Club records on August 22, 1986.

On April 5, 1986, a foal was born to Ja–Girl, named "Lenny's Reign." On July 24, 1986, Loftis filed an Application to register Ja–Girl with the Department for eligibility for Iowa residence brood mare status and to qualify future foals for Iowa-foaled horse status. Said application indicated that Ja–Girl had a foal at side (Lenny's Reign) and, once again, was in foal.

"Iowa-foaled" horses are eligible for supplemental purses and breeders' awards.

The registry of Ja–Girl was accepted by the Department on July 29, 1986, or over three months after Lenny's Reign was born. On December 11, 1986, Loftis filed a Mare Status Report for Ja–Girl. It indicated she was last bred on May 22, 1986, to stallion "Eastern Bazaar," State Registration Number TS00012. Mare status reports have been filed for Ja–Girl in 1987 and 1988. No mare status report was filed for Ja–Girl while she was in foal with Lenny's Reign. No other notification was given to the Department regarding the birth of Lenny's Reign. Hence, no inspection of the foal at the mare's side was conducted by the Department. On November 8, 1988, Loftis filed an application for Lenny's Reign to be considered for the Iowa-foaled horse status. That application was denied November 14, 1988.

**Scope of Review.** The Iowa Administrative Procedure Act (IAPA), ch. 17A, The Code, provides for judicial review of final agency action. § 17A.19, The Code. *See also* § 601A.17(1), The Code ("Judicial review of the actions of the commission may be sought in accordance with the terms of the Iowa administrative procedure Act."). Section 17A.20, The Code, provides:

An aggrieved or adversely affected party to the judicial review proceeding may obtain a review of any final judgment of the district court under this chapter by appeal to the supreme court. The appeal shall be taken as in other civil cases, although the appeal may be taken regardless of the amount involved.

In "other civil cases," this court sits to correct errors of law. Iowa R.App.P. 4.

Thus, this court's duty, under the IAPA, is to correct errors of law made by the district court. *Foods, Inc., v. Iowa Civil Rights Commission,* 318 N.W.2d 162, 165 (Iowa 1982).

The question for this court to determine is: did the Department properly interpret the statute and its rules in denying Loftis' application to register Lenny's Reign as "Iowa foaled?"

The underlying statute for establishing the Department's rules is Iowa Code section 99D.22, titled, "Native horses or dogs."

The applicable portion of section 99D.22(1) is as follows:

A licensee shall hold at least one race on each racing day limited to Iowa-foaled horses ... as defined by the department of agriculture and land stewardship using standards consistent with this section.

Subsections 99D.22(2) and (3) state:

2. For the purposes of this chapter, the following shall be considered in determining if a horse is an Iowa-foaled thoroughbred horse:

a. All thoroughbred horses foaled in Iowa prior to January 1, 1985, which are registered by the jockey club as Iowa foaled shall be considered to be Iowa foaled.

b. After January 1, 1985, eligibility for brood mare residence shall be achieved by meeting at least one of the following rules:

(1) Thirty days residency until the foal is inspected, if in foal to a registered Iowa stallion.

(2) Thirty days residency until the foal is inspected for brood mares which are bred back to registered Iowa stallions.

(3) Continuous residency from December 31 until the foal is inspected if the mare was bred by other than an Iowa registered stallion and is not bred back to an Iowa registered stallion.

\*     \*     \*     \*     \*     \*

3. To facilitate the implementation of this section, the department of agricul-

ture and land stewardship shall do all of the following:

* · * * * * *

b. Provide for the registration of Iowa-foaled horses and that a horse shall not compete in a race limited to Iowa-foaled horses unless the horse is registered with the department of agriculture and land stewardship. The department may prescribe such forms as necessary to determine the eligibility of a horse.

c. The secretary of agriculture shall appoint investigators to determine the eligibility for registration of Iowa-foaled horses.

d. Adopt a schedule of fees to be charged to breeders of thoroughbreds to administer this subsection.

In an attempt to comply with Iowa Code section 99D.22(2), the Department formulated certain rules that include Iowa Administrative Code 21–62 15(3). This rule provides the Department's means of enforcement of its rules and Iowa Code section 99D.22(2). It is as follows:

Additionally, for mares to be eligible for the "Iowa Horse and Dog Breeders' Fund" program and for their foals to be eligible to enter races limited to Iowa-foaled horses, it is required that:

a. A Thoroughbred Brood Mare Registration Application, Form M–4, must be submitted to the department prior to foaling. This registration will cover the mare her entire productive life as long as there is not a change of ownership and the thoroughbred mare meets the eligibility rules set forth in 62.15(2).

b. The owner(s) of the mare must complete and return the Mare Status Report (Form M–5) to the department by December 15 of the year bred.

c. The Mare Status Report must show the place where the mare will foal in this state and the person who will be responsible for the mare at the time of foaling.

d. The Mare Status Report must indicate if the mare is to be bred back to an Iowa registered stallion or to a

stallion standing at service outside the state of Iowa. If the breeding plans as stated on the Mare Status Report are changed, the department must be notified.

The purpose for the Department's requirement for filing of the Brood Mare Registration and the Mare Status Report is to identify the class of mares that can foal eligible horses and to identify and locate mares which will be foaling during the year. This is to allow the Department the opportunity to send an inspector to the location during the approximately six-month period while the foal is at the side of the mare. Apparently, the Department's reasoning goes even further, i.e., if the filings are not timely made pursuant to the above rule, inspection of the foal at the side of the mare cannot take place. If no inspection occurs, the foal cannot qualify for the Iowa Horse and Dog Breeders' Fund. Loftis contends sufficient paperwork was filed, even though it was late. Late filing is permitted by Iowa Administrative Rule 21–62.15(4). This rule provides:

All mares, to meet the December 31st residence requirements, shall be registered by November 30th. The penalty for registering mares after this date is $15.00.

Loftis argues, while this rule establishes a $15.00 penalty for registering mares late, it does not set any time constraints on how late a mare can be registered.

There are other Department rules affecting a determination whether a horse qualifies for the "Iowa Horse Fund." We set them out below:

Eligibility for brood mare residence shall be achieved by meeting at least one of the following rules: (a) thirty days' residency until the foal is inspected, if in foal to a registered Iowa stallion; (b) thirty days' residency until the foal is inspected for brood mares which are bred back to registered Iowa stallions.

Iowa Administrative Code 21–62.15(2)(a)(b).

A foal from a mare meeting the eligibility requirements will be eligible to be-

come an Iowa-foaled horse upon proper application.

Iowa Administrative Code 21–62.16(1–4).

In the case of a thoroughbred horse that meets the standards of an Iowa bred, but for whom a birth certificate or application for certificate was not filed with the Department, the present owner may make application to the Department for horse registration. In these instances, the applicant must provide evidence to the Department and the investigator that the horse qualifies for registration as an Iowa-foaled horse.

Iowa Administrative Code 21–62.16(5).

■ An appropriate standard for courts to use in reviewing administrative rules is the "rational agency" standard. That is, a rule should be held to be within the agency's power when a rational agency could conclude that the rule is within its delegated authority. The burden is placed upon the party attacking the rule's validity to make a clear and convincing showing that it is ultra vires. This "rational agency" test is the means by which we intend, in rule review cases, to determine what weight should be given to an agency's interpretation of the statute which it administered. It is the standard by which an agency's use of its expert discretion is to be judged. *Hiserote Homes, Inc. v. Riedemann,* 277 N.W.2d 911, 913 (Iowa 1979). *Also see Dunlap Care Center v. Iowa Dept. of S.S.,* 353 N.W.2d 389 (Iowa 1984).

Iowa Code section 99D.22(2)(b) mandates an *inspection* of the foal, after January 1, 1985, for consideration in determining if a horse is an Iowa-foaled thoroughbred horse. The Department implemented these rules to enforce this statutory mandate. It established these requirements for filing information and for *physical inspection* of the foal as prerequisites to qualify the foal as "Iowa-foaled."

The trial court did not address the statutory or Departmental rule requirement for an inspection of the foal. We acknowledge, except for the inspection, Loftis has otherwise presented a showing Lenny's Reign was Iowa-foaled. However, the mare status report filed three months after Lenny's Reign was foaled made no claim it was "Iowa-foaled."

■ The Department's interpretation of its rules is a mare must be registered by November 30 to meet the "continuous residency" requirement; if it is not registered by November 30, it may still be registered with the payment of a late penalty. The requirement of the filing of a mare status report is an additional criteria, which is necessary to provide information for necessary inspections. The Department has interpreted this to permit late filing of this information as long as the goal of inspection can still be fulfilled. *See,* IAC 21–62.-15, subrules (3) and (4). Also, the Department has interpreted rule 21–62.16, subrule (5), to mean a horse can be registered as "Iowa-foaled" where the owner can show, in fact, a state inspection took place, even though the Department's records do not so indicate, for example, where the owner delays several years before attempting to register the foal, and the Department's documentation is no longer available.

We conclude the Department's rules requiring registration of the mare and the filing of a mare status report in the year prior to foaling in order to qualify the foal for the program are necessary to carry out the statutory mandate. This is a rational attempt to avoid the disorder and mischief which could result if registration was allowed without requiring independent verification and inspection of the foal while at the side of the mare.

Our supreme court has ordinarily given a "reasonable range of informed discretion" to an administrative agency in interpreting its own administrative rules. The decision of the agency should be given controlling weight unless it is inconsistent with those rules or is plainly erroneous. *Miller v. Civil Constructors,* 373 N.W.2d 115, 117 (Iowa 1985). We hold the Department's interpretation of its rules is a reasonable and rational one. We defer to the Department in its interpretation as there is no compelling showing to the contrary.

■ We also address the issue of whether the Department's interpretation of the

governing statute is reasonable and proper. The Iowa-foaled horse status program is intended as an entitlement to future earnings if the Iowa-foaled horse is a winner in Iowa races. It has the aspects of a type of license or permit. It allows an owner to enter the horse in restricted races and receive additional compensation from winning any race.

The administrative law judge concluded the logical reason for the Department's requirement to file the form and comply with the rules is to provide a ready and convenient means to cross-check to assure horses granted the "Iowa-foaled" horse status are fully qualified. It also is an effort to safeguard the funds available to the breeders industry.

The Department has interpreted Iowa Code section 99D.22(2)(b) as allowing it to devise an objective means of determining which horses are eligible to be registered as "Iowa-foaled" with that means incorporating the statutory requirement of inspection, even to the exclusion of some horses which could have qualified had they complied with the Department's requirements.

In appeals involving an administrative agency's interpretation and construction of the statute, we give weight to the agency's construction, but are not bound by it. *See Polk Co. v. Iowa Natural Resources Council*, 377 N.W.2d 236, 239 (Iowa 1985).

The administrative law judge reasoned equal protection and treatment of all horse owners who aspire to qualify for Iowa-foaled horse status for their horses requires uniformity. That uniformity could and should be achieved through statutes and rules. We observe there is no indication the Department has not enforced these statutes and rules uniformly.

The statute here in question is plain and its meaning is clear; therefore, the courts are not permitted to search for meaning beyond its expressed terms. *State v. Sunclades*, 305 N.W.2d 491, 496 (Iowa 1981). We hold the Department's interpretation and construction of Iowa Code section 99D.22 is reasonable and proper and we defer to it. We also hold there was sub-

stantial evidence to support the administrative law judge's findings, conclusions, and ruling. Also, its decision in this case was not arbitrary or capricious.

The ruling of the district court is reversed and the decision of the administrative law judge and the Department is affirmed and reinstated.

REVERSED.