# IN THE COURT OF APPEALS OF IOWA

No. 20-0529
Filed June 16, 2021

**DAVID WYATT and ROBERT SWAN,**
      Plaintiffs-Appellants,

**vs.**

**CLAY COUNTY BOARD OF SUPERVISORS and CLAY COUNTY DRAINAGE DISTRICT NO. 37,**
      Defendants-Appellees.
_____

Appeal from the Iowa District Court for Clay County, David A. Lester, Judge.


Landowners appeal the summary judgment ruling dismissing their petition to reverse the Clay County Board of Supervisors' action to improve the drainage district. **AFFIRMED IN PART AND REVERSED IN PART.**


David R. Johnson of Brinton, Bordwell & Johnson, Clarion, for appellants.

Robert W. Goodwin of Goodwin Law Office, P.C., Ames, for appellees.


Considered by Bower, C.J., and Vaitheswaran and Greer, JJ.

**GREER, Judge.**

This case falls into the category of be careful what you ask for. To resolve water drainage issues in Clay County Drainage District No. 37 (DD37), landowners David Wyatt and Robert Swan (Landowners) asked for an investigation into the main tiles serving the district. The Clay County Board of Supervisors (Board), as the trustees of DD37, sought to address the excess water situation. The Board investigated the concerns by retaining an engineer, Jonathan Rosengren of Bolton & Menk, to provide recommendations. Rosengren authored an April 2018 report and included plans for an improvement project in DD37 with an estimated cost of $3,678,000. Finding that cost excessive, the landowners attended the hearing on whether to construct the proposed improvement.[1] On January 14, 2019, the Board held the public hearing to address the recommendations. Objections were filed by the various property owners in the district, but the Board determined the remonstrance failed[2] and approved the proposed improvements for the region. After the hearing, the Board scheduled the bid letting for the project for March 26, 2019.

---

[1] All parties concede the project involves an "improvement" and not a "repair." An improvement to an existing drainage district is defined as "a project intended to expand, enlarge, or otherwise increase the capacity of any existing ditch, drain, or other facility above that for which it was designed." Iowa Code § 468.126(4)(a) (2019).

[2] A "remonstrance" is "(1) A presentation of reasons for opposition or grievance. (2) A formal document stating reasons for opposition or grievance. (3) A formal protest against governmental policy, actions, or officials." *Remonstrance, Black's Law Dictionary* (11th ed. 2019). Iowa Code chapter 468 governs drainage districts and improvements. It allows a majority of the landowners to file a written remonstrance against the proposed improvement. *See* Iowa Code § 468.126(4)(e). This section will be discussed in more depth later in the opinion.

These Landowners appealed the decision of the Board to the Clay County Auditor under Iowa Code chapter 468. The Landowners petitioned the district court to reverse the action of the Board under Iowa Code section 468.86. In June, both parties moved for summary judgment. With the theory the remonstrance failed to meet the statutory requirements, the Board asserted the landowners had no remedy and the improvements could proceed. The Landowners resisted the summary judgment motion, asserting the undisputed material facts supported a finding that its remonstrance count required the Board's actions involving the improvements to cease. After a thirty-minute hearing, the district court entered a ruling dismissing the Landowners' motion for summary judgment and granting the Board's motion for summary judgment. Holding the remonstrance failed, all claims pled by the Landowners were dismissed. Now, the Landowners appeal the summary judgment ruling.

**A. Factual Background.**

After experiencing problems with excess waters in DD37, in September 2014 several landowners petitioned for an investigation into the tile mains serving the district. They requested an investigation by a qualified engineer who would "determine the work required to provide sufficient drainage relief for the lands in the district." The Board met in their capacity as trustees of DD37 several days later. The Board voted to accept the petition and to hire Bolton & Menk engineers to investigate the work required and recommend improvements for the DD37. At the next drainage meeting in April 2018, the assigned engineer, Rosengren, provided an extensive report entitled Proposed Main Open Ditch Improvements for DD37. Although the landowners' concerns focused on the tile laterals, the report's

scope was limited to the open ditch flooding. The report described the DD37 open ditch as

> an improvement to a portion of Pickerel Run. The district facilities include approximately 6.8 miles of open ditch and approximately 25 miles of branch tile drains. The watershed of Drainage District No. 37 covers 100.1 square miles (64,050 acres). It includes approximately 14,549 acres that drain directly into the open ditch downstream of the Trumbull Lake outlet in Lake, Meadow, and Freeman Townships in Clay County. The Main Open Ditch also serves as the outlet for Trumbull Lake that receives waters from Clay, Dickinson, Palo Alto, and Emmet Counties including Mud Lake, Round Lake, Twelve Mile Lake and several drainage districts including DD 95, and DD 89 in Palo Alto County and DD 61. DD 61 includes 30,570 acres in Clay, Dickinson, Emmet, and Palo Alto Counties. Only 7,983 acres are currently assessed for benefits derived from the district facilities. This equates to approximately 12% of the contributing 100.1 square mile watershed that the district serves. These assessed lands are located in Sections 21-22, 27-29, and 31-34 of Lake Township (1-97-N, R-35-W); Section 36 of Meadow Township (T-97-N, R-36-W); and Sections 4-6 and 7 in Freeman Township (1-96-N, R-35-W). The lands currently listed for benefit by DD 37 are listed on the current assessment schedule on file in the Auditor's Office.

The engineer also summarized the history of DD37, with a focus on previous construction:

> Drainage District No. 37 has not been substantially repaired since its construction. Below are listed items which have occurred since the establishment of the district.
> 1915-10-28 Petition filed for formation of a district.
> 1916-12-29 Engineer's Report filed.
> 1917-7-20 Contract awarded for constructing open ditch to Northern Construction Co. Leveling the spoil bank was not included in the bid.
> 1918-10-14 Contract awarded for construction of tile branches 293 and 298.
> 1919-4-16 Contract awarded for construction of tile branch 25. Branch 236 tile sizes changed.
> 1919-5-1 Contract awarded for construction of all remaining tile branches within DD 37.
> 1919-6-24 Open Ditch construction completed.
> 1963-8-19 Drainage District No. 37 Subdrainage District No. 1 Engineer's Report filed. Proposed subdrainage district is located in

Sections 32 and 33 of Lake Township and Sections 4 and 5 of Freeman Township. This subdistrict was not established.

1970-5-1 Engineer's Report was filed for establishment of Drainage District 37 Subdrainage 2 tile located in Sections 5, 6 and 8 of Freeman Township.

1972 Subdrainage District No. 2 construction completed.

1992-3-29 Clearing of fallen trees and beaver dams in ditch.

1994-5-25 Tile branch 114 repaired due to tree roots plugging tile.

2014-5-22 Unidentified tile branch repaired due to tree roots plugging tile.

2014-7-25 Landowner requests to install slide gate on district tile outletting into ditch.

2016 Tile branch 171 repaired due to tree roots plugging tile.

As a part of the recommendations, Rosengren opined that the Board annex around 56,960 acres of benefited lands not in the drainage district. He also recommended a reclassification of the existing district to spread more equitably the project costs among landowners.[3] During the August 2018 meeting the Board scheduled a public hearing for December. The Board convened the public hearing to receive and consider the improvements to DD37 as proposed by Bolton & Menk. Written objections to the plan were filed by various landowners. The public hearing was continued to January 14, 2019.

After explaining the scope of work and benefits at the January public hearing, the Board addressed the objections to the proposed project. The attorney for the Board explained that a remonstrance of the improvement required that 50% of the owners holding 70% of the land object. No one disputes that Iowa Code section 468.126(4)(e) applies to this situation; it states:

> If the estimated cost of the improvement exceeds the adjusted competitive bid threshold, or the original cost of the district plus the

---

[3] Rosengren estimated that 88% of the land draining to the proposed improvement benefit from the district facilities but pay no assessment for the maintenance costs. This annexation recommendation was not acted on during the public hearing.

> cost of subsequent improvements in the district, whichever amount is greater, *a majority of the landowners, owning in the aggregate more than seventy percent of the total land in the district, may file a written remonstrance against the proposed improvement, at or before the date set for hearing on the proposed improvement as provided in paragraph "c", with the county auditor, or auditors in case the district extends into more than one county.  If a remonstrance is filed, the board shall discontinue and dismiss all further proceedings on the proposed improvements and charge the costs incurred to date for the proposed improvements to the district.*  Any interested party may appeal from such orders in the manner provided in this subchapter, parts 1 through 5.

(Emphasis added.)  The meeting notes reflect 59.77% of owners with 65.00% of the land opposed the improvements.  The minutes of the meeting noted the remonstrance failed.  The Board then voted unanimously to approve the improvements to the main open ditch as recommended by Bolton & Menk.  The Board directed the engineers to prepare plans and specifications for a bid letting and scheduled it for March 26, 2019.

In February 2019, three Landowners[4] appealed and petitioned for judicial review of the Board's actions under Iowa Code section 468.84.  The Landowners' petition asserted they needed more time to respond at the public hearing, and three of the five Board members suggested they would continue the hearing to allow more time.  The Landowners also alleged violations of their statutory rights under chapter 468 and the Iowa and United States constitutions.  Finally, they applied for a temporary injunction to avoid irreparable and irreversible injury if the

---

[4] Together with the two landowners who filed this appeal, Allen McGranahan was listed on the petition as a plaintiff.  As it turned out, McGranahan owned property not in DD37, but in the area proposed for future annexation by the engineers.  He filed a withdrawal from the proceedings before the hearing on the summary judgment filings.

improvement should proceed.[5]  The Board filed an answer generally denying all allegations of the landowners and raising the issue of standing as to McGranahan because he did not reside in DD37.  McGranahan ultimately withdrew from the case.

In June 2019, the Board moved for summary judgment, simply stating that the remonstrance failed at the public hearing so the landowners had no further remedies under chapter 486.  An affidavit of the county auditor and engineer Rosengren supported the motion and analyzed the remonstrance calculation.  The Landowners resisted, arguing there were disputed facts because the Board "committed errors when they tabulated the objections that constituted a remonstrance."  Connie Swan, a daughter-in-law of landowner Robert Swan, presented an affidavit disputing the remonstrance count.  Citing her background as a certified public accountant, she challenged the calculations of the Board.  Competing affidavits were filed at various stages of the proceedings, and in November the Landowners filed a report authored by its expert witness engineer, Leo Gallentine of Clapsaddle-Garber Associates.  That report was not made part of the summary judgment filings but was referenced by all parties and the court during these proceedings.

After the hearing on both summary judgment motions was held on January 24, 2020, the district court granted the Board's motion for summary judgment, denied the Landowners' motion, and dismissed their petition.  The Landowners appeal the February 27, 2020 ruling.

---

[5] With no objection to the Board's motion to strike, the district court struck the petition for temporary injunction.

**B. Standard of Review and Error Preservation.**

"We review rulings that grant summary judgment for correction of errors at law." *Luana Sav. Bank v. Pro-Build Holdings*, *Inc.*, 856 N.W.2d 892, 895 (Iowa 2014). The grant of "[s]ummary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Susie v. Fam. Health Care of Siouxland*, *P.L.C.,* 942 N.W.2d 333, 336 (Iowa 2020) (quoting Iowa R. Civ. P. 1.981(3)). The court must view the facts in the light most favorable to the nonmoving party, and on behalf of the nonmoving party consider every legitimate inference reasonably deduced from the record. *See Morris v. Legends Fieldhouse Bar & Grill, LLC*, 958 N.W.2d 817, 821 (Iowa 2021).

> When reviewing drainage proceedings of boards of supervisors we apply three principles: the drainage statutes shall be liberally construed for the public benefit; strict compliance with statutory provisions is required to establish a drainage district, while substantial compliance is sufficient as to repairs or improvements; and the procedural requirements should not be too technically construed.

*Hicks v. Franklin Cnty. Auditor*, 514 N.W.2d 431, 435 (Iowa 1994). When key questions in this appeal involve statutory construction, our review is for correction of legal error. *Chi. Cent. & Pac. R.R. v. Calhoun Cnty. Bd. of Supervisors*, 816 N.W.2d 367, 370 (Iowa 2012).

The Board agrees that error was preserved, yet it raises failure to provide affidavits on the Landowners' part to support their arguments outside the remonstrance issue.

**C. Analysis.**

At the onset, the Landowners challenge the summary dismissal of their petition as premature. Key to this case, the party moving for entry of summary judgment bears an initial responsibility to inform the district court of the basis for its motion and to identify those portions of the record that show a lack of a genuine issue. *See Otterberg v. Farm Bureau Mut. Ins. Co.*, 696 N.W.2d 24, 27 (Iowa 2005). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *See id.* at 27-28.

The Landowners first note there are material factual disputes about the final remonstrance calculation that prohibit summary judgment. Even more, the Landowners contend the district court ignored several other claims that require judicial review: (1) the Board failed to continue the public hearing to allow objectors more time to respond and (2) the Board improperly approved the proposed improvement when it was not "necessary or desirable, and feasible." We address these contentions separately.

*1. The remonstrance calculation.*

The Board's motion for summary judgment directed the district court to dismiss all claims pled by the Landowners because the remonstrance failed and the Board should be free to move forward with the DD37 improvement. The Landowners resisted the summary judgment motion addressing the remonstrance calculation, but they also reminded the district court about other issues they raised requiring judicial review. Yet the Landowners filed a summary judgment motion asserting the undisputed facts supported the remonstrance and the Board should

stop progress on the improvements. Both parties represented in their motions for summary judgment that the undisputed facts warranted a summary judgment for that respective party. To put it more simply, the Board said the remonstrance failed to meet the 70% requirement, while the Landowners said the votes exceeded the statutory requirement.[6] At the summary judgment hearing, noting both parties disputed the calculations, the Landowners conceded that "[Landowners] honestly cannot make a good faith argument our motion for summary judgment should be granted" but that neither could the Board. To that end, each party filed pages of documents listing the names of owners in the DD37 and calculating the acres of those owners to account for their ownership interest.

All parties concede that 59.77% of the required majority of landowners objected to the improvements at the public hearing, so that requirement was satisfied. *See* Iowa Code § 468.126(4)(e). The dispute is if that majority of landowners own "*in the aggregate more than seventy percent of the total land in the district.*" *Id.* (emphasis added). After the public hearing in January 2019, the Board concluded: "Objection results in 59.77% of owners of 65.00% of the land oppose an improvement. A remonstrance of the improvement requires 50% of the owners of 70% of the land therefore a remonstrance fails." To show how the Board miscalculated the percentages, the Landowners submitted an affidavit from Connie Swan describing several discrepancies. The Board acknowledged mistakes and recalculated the percentage of ownership opposing the

---

[6] The Landowners' motion for summary judgment settled on 70.5455656% vote, while the Board argued the final calculation was 68.56%.

improvement.  Now we view the evidence to see if any disputed factual issues preclude summary judgment on the remonstrance count.

To determine the landowners in the drainage district, the Board looks to the transfer books in the county auditor's office.[7]  The Board argues it is undisputed that the calculation, after considering all of the corrections urged by the Landowners, equates to 68.56% of the total land in the district.  Here, after correcting errors first made in the count, Rosengren and the county auditor calculated from the transfer books "5,769.946 acres objecting and 8,416.103797 acres in the drainage district, and so that's 68.56 percent objecting."  The district court relied on the Board's exhibit setting out the corrections and resulting calculations.

---

[7] Under Iowa Code section 468.14:

> When any plan and report of the engineer has been approved by the board, such approval shall be entered of record in its proceedings as a tentative plan only for the establishment of said improvement.  Thereupon it shall enter an order fixing a date for the hearing upon the petition not less than forty days from the date of the order of approval, and *directing the auditor immediately to cause notice to be given to the owner of each tract of land or lot within the proposed levee or drainage district as shown by the transfer books of the auditor's office*, including railway companies having right-of-way in the proposed district and to all lienholders or encumbrancers of any land within the proposed district without naming them, and also to all other persons whom it may concern, and without naming individuals all actual occupants of the land in the proposed district, of the pendency and prayer of the said petition, the favorable report thereon by the engineer, and that such report may be amended before final action, the approval thereof by the board as a tentative plan, and the day and the hour set for hearing on said petition and report, and that all claims for damages except claims for land required for right-of-way, and all objections to the establishment of said district for any reason must be made in writing and filed in the office of the auditor at or before the time set for such hearing.

(Emphasis added.)

| | Exhibit | ENGINEER/COUNTY REMONSTRANCE CALCULATIONS | | | | | CONNIE SWAN REMONSTRANCE CALCULATIONS | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Total Acre Change | Total Acres | Objected Acre Change | Total Objected Acres | Remonstrance Percentage | Total Acre Change | Total Acres | Objected Acre Change | Total Objected Acres | Remonstrance Percentage |
| 1-14-2019 Initial Remonstrance (Exhibit A) | Exhibit A | | 8233.4858 | | 5351.8986 | 65.00% | | 8233.4858 | | 5351.8986 | 65.00% |
| Addition for Dual Owner corrections | Exhibit B | | 8233.4858 | 383.3917 | 5735.2902 | 69.66% | | 8233.4858 | 383.3917 | 5735.2902 | 69.66% |
| Addition for Brian Galbraith | Exhibit B | | 8233.4858 | 15.4955 | 5750.7858 | 69.85% | | 8233.4858 | 15.4955 | 5750.7858 | 69.85% |
| LeAnn McGranahan recalculation | Exhibit B | | 8233.4858 | 5.0000 | 5755.7858 | 69.91% | | 8233.4858 | 5.0000 | 5755.7858 | 69.91% |
| Marjorie Batcheler recalculation | Swan Affidavit | | 8233.4858 | | 5755.7858 | 69.91% | | 8233.4858 | 53.1060 | 5808.8917 | 70.55% |
| Add missing total acres | Exhibit C | 173.0004 | 8406.4862 | | 5755.7858 | 68.47% | 173.0004 | 8406.4862 | | 5808.8917 | 69.10% |
| Correction to Tract 100.1 counted twice | Exhibit C | -4.5427 | 8401.9435 | | 5755.7858 | 68.51% | -4.5427 | 8401.9435 | | 5808.8917 | 69.14% |
| Add Tract f - omitted parcel | Exhibit C | 14.1603 | 8416.1038 | 14.1603 | 5769.9461 | 68.56% | 14.1603 | 8416.1038 | 14.1603 | 5823.0521 | 69.19% |
| Annexed Lands Added (Includes Parcel g) | Swan Affidavit | 1.3000 | 8417.4038 | 1.3000 | 5771.2461 | 68.56% | 84.7710 | 8500.8748 | 84.7710 | 5907.8231 | 69.50% |
| Removed Tract 105 for incorrect parcel # | Swan Affidavit | | 8417.4038 | | 5771.2461 | 68.56% | -50.9982 | 8449.8766 | | 5907.8231 | 69.92% |
| Removed Tract 5 - US Fish & Wildlife | Swan Affidavit | | 8417.4038 | | 5771.2461 | 68.56% | -75.3983 | 8374.4783 | | 5907.8231 | 70.55% |
| Row on Parcels in District | Exhibit D | -115.5500 | 8301.8538 | -94.4533 | 5676.7928 | 68.38% | -115.5500 | 8258.9283 | -94.4533 | 5813.3697 | 70.39% |
| ROW Owned by DD 37 | Exhibit D | 124.9000 | 8426.7538 | | 5676.7928 | 67.37% | 124.9000 | 8383.8283 | | 5813.3697 | 69.34% |

Based on the dueling motions for summary judgment, affidavits, and documents, the district court summarized the information to reach a decision:

> As a response to Connie Swan's calculation, the Board adjusted their calculation and came to a final remonstrance percentage of 68.56%. This final percentage does not include the annexed lands nor the rights of way. As set forth above, this Court finds the annexed landowners cannot remonstrate—therefore confirming the Board's exclusion of these lands from the calculation. Section 468.126 clearly affords voting to only owners of land, not owners of easement, therefore justifying the exclusion of the rights of way.
>
> Reviewing the spreadsheet at the end of Toay and Rosegren's July 2, 2019 affidavit, the Court notes the parties had same total acres (denominator) of 8416.1038 through the first eight rows. In the same rows, the parties diverge on the objecting acres (numerator) only on Marjorie Batcheler's 53.1060 acres: the Board did not count these in; the Plaintiffs count these in. From row 9 till [row] 13, parties diverge on adding or subtracting acres from the denominator. There should be no annexed lands added. The Board did not remove Tract 105 because it was counted in correctly after using the correct parcel number. U.S. Fish & Wildlife should remain in the total due to their ownership and assessment. DD37's right-of-way cannot be added because DD37 is not ownership of these acres.
>
> In the end, the Board's row 11 figures of total and objecting lands are correctly computed—which result in a remonstrance of 68.56%. Even adding Marjorie Batcheler's 53.1060 acres to the

> objecting land, which the Court finds should not be included for the reasons stated in the Board's affidavit, the final percentage ends up at 69.19%: (5771.2461+53.1060)/8417.4038. Therefore, the remonstrance fails because it is below the statutorily required 70%. To the extent that Point 8 in Gallentine Report lists discrepancies between transfer books and county recorder's office, the Plaintiffs cite to no authority why these discrepancies should overcome statutory requirement of basing remonstrance on transfer books. This Court does not see reason to deviate from the statute.

(Citation omitted.) Because the district court addressed the Gallentine expert report, we discuss its impact to this remonstrance issue.[8] After the summary judgment motions and supporting documents were filed, in November 2019 the Landowners served Gallentine's expert witness report. That report included an analysis about the remonstrance count. The district court found it could not consider the report as a matter of law because the Landowners never moved to supplement the summary judgment pleadings. Still, the Board applied to reset the hearing on the motions and included many references to Gallentine's conclusions. Attached to that application was a new affidavit from the county auditor and Rosengren with updated corrections to the calculations in response to Gallentine's opinions. Likewise, the Board referenced the Gallentine report in the oral argument and urged that even with his conclusions, the computation would be 66.291%. And in the ruling the district court detailed Gallentine's arguments, discussing each point. In our review, we find the district court and all parties included the Gallentine report as part of the record, so we consider it as well.

---

[8] The Landowners argued that the Gallentine report identified seven reasons why the Board's remonstrance calculation was incorrect, but most related to those Connie Swan also raised.

Having reviewed the facts associated with the remonstrance calculation, we agree with the district court's confirmation that the remonstrance correct calculation was 68.56%. After addressing the corrections raised by the Landowners and applying the correct standards related to those corrections, we find no dispute in the math. The final calculations did not meet the 70% statutory requirement. Thus, the remonstrance failed and summary judgment on this issue was proper.

*2. The other claims.*

Finally, to preserve part of their case, the Landowners dispute the summary judgment ruling dismissing all claims made by them in the petition. Even if the remonstrance failed, the Landowners assert the claims related to the Board's behavior remain viable for judicial review. Our legislature vested the Board with authority to "order done whatever is necessary to restore or maintain a drainage or levee improvement in its original efficiency or capacity," including the "repair [of] any damaged structures . . . and whatever else may be needed to restore or maintain such efficiency or capacity or to prolong its useful life." Iowa Code § 468.126(1)(a); *see also Bd. of Trs. of Farmers Drainage Dist. v. Iowa Nat. Res. Council*, 78 N.W.2d 798, 803 (Iowa 1956) (stating analogous provision in prior statute was "a comprehensive provision imposing the mandatory duty on trustees of a drainage district to keep its drains in repair and authorizing [trustees] to 'order done whatever is necessary to restore or maintain' the 'improvement in its original efficiency or capacity'" (citation omitted)).

But as noted, landowners can object to the Board's actions. *See Allen v. Webster Cnty. Bd. of Supervisors*, No. 07-0876, 2008 WL 782811, at *4 (Iowa Ct.

App. Mar. 26, 2008). After the Board considers the landowner feedback on a proposed improvement, the Board "shall order that the improvement it deems *necessary or desirable and feasible* be made and shall also determine whether there should be a reclassification of benefits for the cost of the improvement." Iowa Code § 468.126(4)(d) (emphasis added). Yet here, the Landowners assert the district court summarily dismissed this claim in their petition even though the Board made no motion for summary judgment addressing the issue.

True, when the Board moved for summary judgment, it focused only on the remonstrance issue yet urged the Landowners' petition should be dismissed in its entirety. As a part of its resistance to the summary judgment motion, the Landowners reminded the district court of the other issues raised in the petition not addressed in the Board's motion. To respond, the Board argued the Landowners presented no affidavit supporting the other issues pled. And the Board continued

> [Landowners] have not alleged, nor provided any affidavits or proof that the [Board's] actions amounted to fraud, were in excess of jurisdiction, or amounted to an abuse of discretion. Therefore, the [Board] as a matter of law [is] entitled to summary judgment in regard to Division I of [the Landowners'] Petition.

*See Johnson v. Monona–Harrison Drainage Dist.*, 68 N.W.2d 517, 523 (Iowa 1955) ("Such relief [setting aside the action of the Board] should not be granted unless it appears the [Board's] action of approval amounted to fraud, was in excess of jurisdiction, or that it amounted to an abuse of discretion." (referencing Iowa Code chapter 455, now renumbered chapter 468)).

The district court adopted the Board's arguments made in response to the Landowners' resistance. But the Board's motion for summary judgment only addressed its theory that the remonstrance failed and did not tackle the other

allegations made by the Landowners. While the Board correctly stated the burden of the Landowners to prove those other claims, the Landowners were not required to prove those claims in response to a summary judgment motion based on another theory.

> To obtain a grant of summary judgment on some issue in an action, the moving party must affirmatively establish the existence of undisputed facts entitling that party to a particular result under controlling law. . . .
> . . . .
> . . . When the evidentiary matter tendered in support of the motion does not affirmatively establish uncontroverted facts that sustain the moving party's right to judgment, summary judgment must be denied even if no opposing evidentiary matter is presented.

*Griglione v. Martin*, 525 N.W.2d 810, 813 (Iowa 1994), *overruled on other grounds by Winger v. CM Holdings, L.L.C.*, 881 N.W.2d 443, 446 (Iowa 2016). Failure of the nonmoving party to properly resist the motion does not relieve the moving party of its obligation to show the district court there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. *See Otterberg*, 696 N.W.2d at 27. As to the other claims raised by the Landowners, the Board failed to support its motion for summary judgment with the requisite undisputed facts. While we do not comment on the ultimate success of those other claims, we cannot uphold the summary dismissal of allegations not yet tested. We reverse the district court summary judgment ruling as to all other claims raised by the Landowners.

**D. Conclusion.**

We affirm the summary judgment ruling finding the remonstrance failed but reverse the ruling as to all other claims urged by the Landowners for further development.

**AFFIRMED IN PART AND REVERSED IN PART.**